(Nos. 25212, 25244.—

THE PEOPLE *ex rel.* Horace G. Lindheimer, County Collector, Appellee, *vs.* T. H. HAMILTON, Appellant.—THE PEOPLE *ex rel.* John L. Toman, County Collector, Appellee, *vs.* NINE HUNDRED NORTH MICHIGAN BUILDING CORPORATION, Appellant.

*Opinion filed February 13, 1940.*

SCOTT, MACLEISH & FALK, (ROBERT S. CUSHMAN, and POMEROY SINNOCK, of counsel,) for appellant T. H. Hamilton; WOODS, WOODS, BROWN & SALTER, (ADELBERT BROWN, ROBERT N. HOLT, and ROBERT E. CORCORAN, of counsel,) for appellant Nine Hundred North Michigan Building Corporation.

THOMAS J. COURTNEY, State's Attorney, RICHARD S. FOLSOM, JOHN O. REES, and KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, (JOSEPH B. FLEMING, ALBERT FINK, THOMAS M. THOMAS, THOMAS F. SCULLY, MARSHALL V. KEARNEY, and BRENDAN Q. O'BRIEN, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Both of these causes are appeals taken from the judgment of the county court of Cook county, overruling objections to certain taxes for the year 1936. Cause No. 25212 involves objections to taxes of the board of education of the city of Chicago, levied for new buildings, and objections to that part of the 1936 taxes for the Chicago Park District for the purpose of paying principal and interest on certain revolving-fund bonds in the amount of $5,000,000, claimed to have been authorized and issued in excess of its constitutional debt limitation. Cause No. 25244 involves the same item of taxes of the board of education, and the 1936 taxes of the Cook County Forest Preserve District, levied for the purpose of constructing and maintaining a zoölogical park. In both causes, the objections were overruled and

appeals were taken directly to this court. In both causes, the objections to the taxes for "new buildings" included in the appropriation set out in the budget of the board of education, to be paid from the building fund, are based upon the claim that the amount appropriated includes payments on contracts for school buildings in course of construction, and, also, for buildings to be constructed under contracts to be let during the school year, and is, therefore, not sufficiently itemized. The statute authorizing taxes to be levied for school purposes provides for two funds—the educational fund and the building fund, for each of which a separate tax is provided. Until the adoption of the so-called Budget law (Ill. Rev. Stat. 1939, chap. 122, par. 158a) it was not necessary for a board of education to do more than specify the amounts to be expended out of each fund, without itemization. *Koelling* v. *People,* 196 Ill. 353.

When the Budget law for school districts having a population of 500,000 or more was enacted it required the taxes to be levied and expended in accordance with the annual budget in such school district. The purpose of requiring a budget was to insure that taxes levied for specific school purposes should be expended for such purposes. The act requires estimates of all current assets and liabilities of each fund of the board of education, and the amount of such assets available for appropriation, whether for expenditures or charges to be made or incurred during the year, or for liabilities unpaid at the beginning of the year. It shall also contain an estimate of the net amount of taxes to be received from the levies of prior years, and the liabilities of the respective funds, including the amount of final judgments and interest; the principal amount of anticipation warrants, temporary loans and accrued interest, and any amount which the board is required to pay back to the working cash fund for educational purposes. Such school budget shall also set forth the estimate of taxes to be levied for the current year and all revenue to be derived

from sources other than taxation, and such estimates shall be segregated and classified as to funds, in such manner as to give effect to the requirements of law relating to the purposes to which said assets and taxes and current revenue are applicable, so that no expenditures shall be authorized for any purpose in excess of the money lawfully available for such purpose. To accomplish this purpose the act further provides that the budget shall specify (a) the several organization units, purposes and objects for which appropriations are made, (b) the amount appropriated for each organization unit, purposes or object, and (c) the fund from which or to which each amount appropriated is to be paid or charged.

The particular item objected to in the budget is as follows:

| Budget Index | Items of Appropriation Under Standard Accounts | Amounts Appropriated |
|---|---|---|

School Buildings—60—To provide for payments on contracts of sundry school buildings in course of construction and to be constructed on contracts to be awarded upon special authority of the Board of Education.

S-700   New Buildings . . . . . . . . . . . . . . . . . . . . . . . . . . . . $5,770,900.00

This item must be examined in connection with other pertinent parts of the budget set out in the record. Under the heading of "estimated resources" nine separate funds, including the educational and building fund and the gross amount of the 1936 tax levy, together with the miscellaneous revenue and the resources available for appropriation, are enumerated. In like manner, current liabilities and charges against such assets are set forth. When it comes to the expenditures authorized to be made out of the taxes levied for the current year, and the assets on hand, the separate purposes for which money may be expended are set forth and summarized for each of said nine funds,

among which is the building fund. It, in turn, is divided into five general purposes, which are subdivided again into special or specific items as follows:

SUMMARY STATEMENT OF DETAILED ITEMS HEREIN AND HEREBY APPROPRIATED FROM THE BUILDING FUND, CLASSIFIED BY CHARACTER OF EXPENDITURE UNDER STANDARD ACCOUNTS, ALSO APPROPRIATION FOR UNPAID LIABILITIES INCURRED DURING PRIOR YEARS.

Buildings and Sites                                   Appropriation—1936
    R—Repairs and Replacements.... $3,421,614.00
    S—Permanent Improvements . . . .      390,673.00
    S—New Buildings . . . . . . . . . . . .   5,770,900.00
    T—Sites and Condemnation
        Expense . . . . . . . . . . . . . . .      120,000.00
                                             ———————— $ 9,703,187.00

Obligations, Gratuities, Etc.
    U—Rent and Insurance. . . . . . . . . $  225,407.00
    W—Special Assessments . . . . . . . .    621,000.00
                                             ———————— $   846,407.00

Debt Service
    V—Loss and Cost of Collection... $  791,546.00
    V—Bonds and Interest. . . . . . . . . .    304,760.00
                                             ———————— $ 1,096,306.00

Other Purposes
    Z—Additional for Salaries, Service,
        Contracts, etc. . . . . . . . . . . . $1,443,500.00
                                             ———————— $ 1,443,500.00

    Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $13,089,400.00
    For unpaid liabilities incurred during prior years $15,025,948.27

    Total Appropriated—1936 . . . . . . . . . . . . . . . . . . . $28,115,348.27

The item complained of is identified above under the designation "New Buildings . . . $5,770,900.00."

In providing that the building fund shall be classified and accounts kept under nine different heads, the budget complies with the requirement that the several organization units, purposes and objects be specified. The second requirement, that the amount appropriated for each organization unit, purpose or object, be specified, is followed by

setting forth the amount for each of the nine itemized purposes, and the third requirement of specifying the fund from which the appropriation is to be paid, is clearly set forth under the designation "Items herein and hereby appropriated from the building fund," in such a manner that the named items cannot be charged against or expended from any other fund.

The object of budgeting as set forth in the statute is that "all such estimates shall be segregated and classified as to funds, and in such other manner as to give effect to the requirements of law relating to the respective purposes to which said assets and taxes and other current revenues are applicable, to the end that no expenditure shall be authorized or made for any purpose in excess of the money lawfully available therefor." We do not find anything in this language that requires a specific itemization of every expenditure anticipated to be made for each separate school or for the building of separate schools. A great number of cases have been cited as to the degree of itemization required in the annual appropriations or tax levies of cities, counties, townships and other municipal bodies, and while they have their value as illustrating a principle, yet their application depends upon the statutory provisions relating to each separate municipality. Until the passage of the Budget law it was not necessary to state the object of the school tax any more definitely than that it was for an educational purpose or a building purpose. The Budget law is, therefore, principally for the purpose of requiring school taxes levied for a definite purpose to be applied to that purpose. To accomplish this, the Budget statute requires that the object of the appropriation be stated, the amount necessary to accomplish that object be specified, and the fund out of which it is to be paid, named. The measure of specification or itemization is fixed by the statute in a general way, so as to set forth objects, amounts and sources of payment. It has been repeatedly held that it is not

necessary to state each particular purpose for which a tax is levied where each such purpose is properly embraced in one general designation. (*People* v. *Schiek,* 368 Ill. 353; *Siegel* v. *City of Belleville,* 349 id. 240; *People* v. *Pitcairn,* 371 id. 616.) It has not been pointed out in what manner the appropriation for buildings actually under contract and those about to be constructed can be paid for out of any fund except the building fund, nor be paid from any part of the building fund except that portion set aside and allocated for "new buildings," the item here in controversy. We find nothing in the statute that requires a separate specification of each new building, whether already authorized or to be authorized during the year; to so require might unduly hamper and restrict the board of education in appropriating for "expenditures to be incurred during the year."

Complaint is made that certain symbols and numbers in the appropriation for new buildings are unintelligible and meaningless. The law providing that copies of the budget be available before the levy ordinance is passed, was complied with, and any person sufficiently interested to examine it must know such characters were an index to connecting portions of the budget. Moreover, the item is referred to as one appearing "under standard accounts," designated in the same manner in the appropriation of the building fund. A budget in substantially the same form was approved in *People* v. *White,* 367 Ill. 415. The objection to the appropriation of the board of education for new buildings was properly overruled by the county court.

The forest preserve tax levy for zoölogical purposes is as follows: "For the purpose of creating, constructing and maintaining a zoölogical park," etc. The contention is made by appellant that since a zoölogical park has been in existence since 1926 the purpose of "creating" is needless since it has been accomplished, and, therefore, such a levy is illegal, and as the amount for such purpose is un-

known and cannot be estimated, the whole levy is illegal, because the amounts to be used for the proper purposes of constructing and maintaining cannot be ascertained, and thus, being wholly illegal, it may not be validated. Objection is also made that the object and purpose of the amount appropriated are not separately stated.

The first objection assumes the power given by statute to a park district to construct a zoölogical park is completely exhausted by the establishment of the ones now in existence. The statute does not so limit the authority of the forest preserve board, as its language, by the use of plural terms in the enacting clause and by providing a minimum charge for admission to "such parks," plainly indicates that more than one zoölogical park may be built. (Ill. Rev. Stat. 1939, chap. 57½, par. 18.) Moreover, even though such plural terms were not used in the statute, we see nothing in it that would confine the district to having one zoölogical park, as only the purpose and amount of the tax is fixed and not the size or number of the institutions it will sustain. Appellants claim that the use of the word "create," in the levy, imports that the tax is for an illegal purpose and for something not authorized by law. The authority for levying a tax in the statute is as follows: "For the purpose of constructing, maintaining and caring for" a zoölogical park. (Ill. Rev. Stat. 1939, chap. 57½, par. 19.) In a proper sense, the creation of a public park is brought about by legislation, since it may only be created by authorizing the use of money in laying out and improving land, and, therefore, the use of such a word must relate to the authority to do such work, and not the work itself. The creating of the forest preserve district and giving it the right to expend money for zoölogical parks, was a legislative act, and the most that can be said in applying meaning to the word "create" is that it means the exercise of the authority under which parks are established and constructed with money raised by taxation.

A park tax levy for the same purpose and in the same language was before us in *People* v. *Devine Realty Trust,* 366 Ill. 418, and we held it defective because "constructing" and "maintaining" were two separate purposes and were not itemized as required by law. In the same case, we held the word "creating" has substantially the same meaning as "establishing," but our holding was definitely based upon the failure to itemize the purposes above mentioned. If we construe the word "create" as meaning "establish," as we held in the *Devine case, supra,* we are forced to a like conclusion that such word is not used in the sense of a purpose for which money can be expended, but as the designation of a proper action of the forest preserve district board under legislative authority. No suggestion is made how money could possibly be expended for "creating" or "establishing" which would not also come within the meaning of "construction," and we are, therefore, forced to the conclusion that the word, as used in such levy, is either surplusage or mere tautology in describing a lawful. purpose. A tax authorized for a lawful public purpose may not be invalidated merely because a word used in the levy has a shade of difference in meaning from that of the words contained in the statute designating the purpose, when it is not possible to discover that it will authorize the use of tax money in an unlawful way. We are of the opinion that the use of the word "creating," in the tax levy under consideration, was not intended to mean nor authorize the use of money for purposes that would not be comprehended within the terms "constructing" and "maintaining" a zoölogical park.

However, the tax levy for maintaining and constructing designated two purposes and the amount of each was not itemized as required under our holding in *People* v. *Devine Realty Trust, supra,* which requires us to examine the effect of the validating act of July 9, 1937. The validating act of July 9, 1937, provides: (1) It applies to ap-

propriation and tax levying ordinances of forest preserve districts for the years 1935 and 1936 for corporate and zoölogical purposes; (2) it validates all taxes assessed, levied or extended where they are not specifically itemized as required by statute, and (3) it validates such tax where the language used renders the purpose for which the amounts are appropriated and levied, uncertain and illegal. The construction of such statutes has been before this court many times and applied to such a variety of situations that the results reached in some instances appear to be conflicting. The general rule now followed is laid down in *People* v. *Chicago and Eastern Illinois Railroad Co.* 365 Ill. 202, in which it is said: "Many so-called curative or enabling acts have been before this court for review. From a resume of the decisions upon this subject the rule emerges that the legislature may by a statute validate the illegal or defective exercise of a power where the power already exists and the proceeding sought to be cured was one of the fundamentals of the power exercised. However, the General Assembly cannot give validity to the exercise of a power where such assumed power did not exist at the time it was purported to have been exercised. The power to levy a tax by an administrative body is jurisdictional. Jurisdiction to act cannot be conferred by subsequent legislative act where the assumed power to act was lacking at the time the purported proceeding was had." This case is cited with approval and followed in *People* v. *Southern Railway Co.* 367 Ill. 389, and *People* v. *Illinois Central Railroad Co.* 369 id. 432.

As we have pointed out, the appropriation for zoölogical purposes in legal effect was for the purpose of constructing and maintaining the park, and if there is a shade of difference in meaning between "creating" and "constructing" it is covered by the third provision of the validating act purporting to cure appropriations and levies that are uncertain. The forest preserve district had the power to levy taxes for zoölogical park purposes and for this purpose funds could

be expended for constructing, maintaining or caring for the park. The fundamental requirements for raising money for this purpose were to have legal authority vested by statute to levy a tax, and the making of such levy by the proper body, within the proper time. The designation of the particular purposes for which the money was to be expended was an administrative requirement, and the failure of the authorities to so itemize the several purposes is an irregular exercise of power by the taxing body and does not go to the fundamental right to levy the tax. We have held, on several occasions, that a failure to itemize may be validated by a subsequent act. (*People* v. *Chicago, Milwaukee and St. Paul Railroad Co.* 324 Ill. 43.) Since all of the requirements for a legal levy have been observed, except that of itemizing the several purposes, the validating act of July 9, 1937, was properly applied by the county court in overruling objections of appellant.

Taxes for the revolving-fund bonds of the Chicago Park District are objected to on the ground that the bonds are invalid, in part, as creating an indebtedness exceeding five per cent of the value of the taxable property within such district. The assessed valuation of the property would authorize the issuance of bonds in the amount of $113,807,154. Bonds issued and outstanding, exclusive of $5,000,000 of refunding bonds, amount to $108,275,407 which, with the unfunded debt of $2,894,673, made the indebtedness of the the park district on May 5, 1936, $111,170,080, to which the adding of $5,000,000 of refunding bonds would cause the Chicago Park District to incur an indebtedness of $2,362,926 in excess of its legal limit. The claim, however, is made by the appellee park district that it has the sum of $4,225,306 in a sinking fund account which, under the law, it is entitled to credit against the outstanding indebtedness, thereby reducing it by such sum and making the refunding bonds legal. In other words, it is claimed that this sum of $4,225,306 is so inviolably designated by

law to the sole purpose of paying off bonds that it can be used for no other purpose and, therefore, the district can not be said to be indebted in the manner prohibited by the constitution.

Two questions present themselves: First, whether a sinking fund designated for the sole purpose of bond retirement, on hand in cash, may be deducted in ascertaining the amount of debt outstanding, and second, whether a sinking fund is, in fact, created by law, that may be applied solely to the reduction of the principal debt of the park district as it existed on May 5, 1936. The language of the constitution of 1870, section 12 of article 9, is explicit in prohibiting any municipal corporation from becoming indebted, in any manner, in the aggregate exceeding five per cent on the value of the taxable property therein. The object is to protect the property of citizens from being burdened beyond that extent, and any plan or scheme which has the effect of creating such excess burden is prohibited by the constitution. (*People* v. *Chicago and Alton Railroad Co.* 253 Ill. 191; *Tribune Co.* v. *Thompson,* 342 id. 503; *People* v. *Nelson,* 344 id. 46.) The amount of such indebtedness is not reduced by the amount of cash such municipality may have on hand in the treasury subject to general disbursement, as it is perfectly apparent that an obligation is no less a debt merely because of the fact that the debtor has on hand cash with which to pay it. (*City of Chicago* v. *McDonald,* 176 Ill. 404; *Wade* v. *East Side Sanitary District,* 320 id. 396.) This principle, however, does not apply to cash or bonds in a sinking fund created by law, which may be applied solely to the discharge of certain indebtedness, as in such case the money being on hand and usable solely for the purpose of discharging a debt, the latter is regarded as apparent and not real. (*Stone* v. *City of Chicago,* 207 Ill. 492.) This is the general rule in most jurisdictions having a constitutional debt limitation similar to that of Illinois. (*Schuldice* v. *City of Pittsburgh,* 234

Pa. 90, 82 Atl. 1125; *Rice* v. *City of Milwaukee,* 100 Wis. 516, 76 N. W. 341; *City of Stamford* v. *Town of Stamford,* 107 Conn. 596, 141 Atl. 891; *Kelly* v. *City of Minneapolis,* 63 Minn. 125, 65 N. W. 115.) The same principle is recognized in *Kocsis* v. *Chicago Park District,* 362 Ill. 24, where it is held that the issuance of refunding and funding bonds does not create additional indebtedness but merely evidences existing debts.

In order that cash in the hands of a municipality may be deducted to ascertain whether the constitutional debt limitation has been exceeded, it is necessary that such fund be clearly designated as being usable solely for the purpose of discharging some outstanding indebtedness in such a manner that its application to such purpose can be enforced by law.

An examination of the Chicago Park District act (Ill. Rev. Stat. 1937, chap. 105, par. 333.12) and the act under which said Chicago Park District was authorized to assume the indebtedness of the several park districts which it superseded, (Ill. Rev. Stat. 1937, chap. 105, par. 333.33,) becomes necessary. The statute provides that the Chicago Park District shall be vested with the property and funds of the superseded districts and that any fund held by such superseded district for a particular purpose shall be set aside and used by the Chicago Park District only for the purpose originally designated, and further provides that any surplus remaining after such purpose is accomplished shall become a part of the general corporate fund of the Chicago Park District; that any property or fund formerly held in trust shall likewise be held by the successor district in trust; that taxes and special assessments levied by the superseded districts shall be applied to the purposes for which they are levied and that any surplus remaining after the accomplishment of such purposes shall become a part of the general corporate fund of the Chicago Park District. The assumption statute authorized the Chicago Park District to use

money available from uncollected taxes of the superseded district to be placed in a sinking fund account and used to purchase and pay refunding bonds and interest thereon, and directed the commissioners, in setting up the sinking fund, to deposit therein money equal to the amount of interest that will accrue on all the refunding bonds for a period of six months or, at their discretion, the commissioners may require that the sum set aside may be equal to the amount of interest that will accrue within the last twelve months' period. Interest is not regarded as a debt within the meaning of the constitutional limitation of a municipality until it is earned and becomes due. (*Wade* v. *East Side Sanitary District, supra.*) Therefore, the park commissioners were authorized to pay into the sinking fund moneys that would not be applied in reducing indebtedness of the park district within the meaning of the constitution.

There was on hand, collected from taxes or funds of the prior districts at the date of the levy, $6,996,873, of which, it is claimed, $4,225,306 was exclusively applicable to the payment of bond principal of the then outstanding bonds. In computing that this amount was available for such purpose, six months' interest, only, on $108,275,407, was deducted, but, as we have pointed out above, the commissioners had the right and power to designate that twelve months' interest should be paid out of the taxes and funds taken over from the superseded districts. With this provision in the statute, it was the right of the commissioners to take from this fund the further sum of $2,430,842, which would be six months' additional interest on series A, B, C, and D bonds, amounting to $99,085,708, and $349,550 interest on series E bonds, aggregating $9,189,698.

Appellee's contention, then, that it is a positive requirement that moneys coming from the superseded district be used for the purpose of creating a sinking fund for retiring the principal of bonds, must necessarily fail if the fund could be used for some other purpose, and to the extent that such fund could be used for paying interest it is not in-

violably segregated for bond retirement purposes. The situation, therefore, presents itself as follows: The total bond indebtedness on May 5, was $108,275,407. The unfunded debts were $2,894,673 and the revolving-fund bonds amounted to $5,000,000, a total of $116,170,080. Out of the cash on hand derived from taxes and other sources of predecessor districts there was the sum of $6,996,873. It was within the right of the commissioners to pay out of this sum one year's interest on series A, B, C, and D bonds, amounting to $4,162,623 and one year's interest on series E bonds, amounting to $349,550, a total deduction for interest of $4,512,173, leaving in such funds, applicable to the payment of principal of bonds, $2,484,700. After this amount is credited on the amount of the total indebtedness above, there remains an indebtedness of $113,685,380, which is within the debt limitation of $113,807,154, stipulated to be the limit. Contention is made by appellants that no part of the money previously collected from superseded districts was a part of a sinking fund for the retirement of the principal of bonds, but the stipulation shows that the entire amount of $6,996,873 was secured from tax levies for bonds and interest of such park districts and, therefore, applying the trust contained in section 12 of the Chicago Park District act, *supra,* the whole fund except such as might be allocated for one year's interest, must be applied to the original purpose for which it was levied. The condition under which such taxes became a part of the general corporate fund of the Chicago Park District did not occur until the purposes for which the tax was originally levied were performed.

We conclude that the revolving-fund bonds in the amount of $5,000,000 issued by the Chicago Park District did not create a debt in excess of the constitutional limit.

The judgments of the county court of Cook county are affirmed, in both cases.            *Judgments affirmed.*