(No. 25927.—

THE PEOPLE *ex rel.* John L. Toman, County Collector, Appellant, *vs.* THE ESTATE OF PHILO A. OTIS, Appellee.

*Opinion filed February 14, 1941—Rehearing denied April 8, 1941.*

THOMAS J. COURTNEY, State's Attorney, RICHARD S. FOLSOM, JOHN O. REES, and KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, (JOSEPH B. FLEMING, THOMAS M. THOMAS, and THOMAS F. SCULLY, of counsel,) for appellant.

ROBERT N. HOLT, ADELBERT BROWN, and BARR, BARR & CORCORAN, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, the estate of Philo A. Otis, having previously paid its taxes in full, under protest, filed objections in the county court of Cook county to an application of the county collector for a judgment against and an order for the sale of real estate for the non-payment of certain taxes for the year 1938 levied by the board of education of the city of Chicago and the Chicago Park District. From the judgment sustaining these objections and ordering a refund of the excess amount paid by the defendant, the collector appeals.

The county clerk extended a rate of $3.18 for taxes levied by the board of education. This rate included a levy of .012774, representing the following item in the budget of the board of education to be paid from its building fund:

"SPECIAL ACCOUNTS NOT APPROPRIATED FOR ELSEWHERE — 70

\* \* \*

"Maintenance of Plant:

"3-Z-600. Materials, Supplies and Expenses and supervision of painting and decorating in conjunction with WPA Projects............$250,000.00."

The objection to this item is that it is indefinite, vague and uncertain, and, further, that it is not for a corporate purpose.

It appears that the Works Progress Administration, (hereafter referred to as WPA,) an agency of the United States, furnishes labor for municipal improvements, without charge, if public authorities such as the board of, education will, in turn, supply the necessary material, supplies and expenses incident to a particular project. The extent to which the WPA renders financial assistance on projects sponsored by the board, or like public body, is dependent upon the funds and man-power available from month to month. Specifically, the policy of WPA is to make no commitments with respect to any designated school building. Accordingly, when the budget was being prepared, the challenged appropriation could not be broken down either as to the particular school buildings where any part of the appropriation would be used or the proportion which would be spent for materials, supplies, expenses or supervision, or the amount which would be used for painting, as distinguished from decorating, for the adequate reason that details could not be determined until WPA indicated the building on which it was willing to give aid and the time when it was willing to do the work. In short, all the board could and did do was to indicate that it would spend a specified amount on painting and decorating. The auditor for the board of education explained the futility, if not folly, of breaking down the appropriation any further by an apt illustration: If the board had appropriated $30,000 for materials, supplies, expenses and supervision incident to painting and decorating the Hyde Park High School, this sum would be specifically allocated to the building named, and if, thereafter, the WPA, owing to a shortage of funds or labor, declined to participate in this proposed improvement the board would thereby have deprived itself of free labor that otherwise might have been furnished by the WPA. Another witness, the chief WPA project engineer of the board of education, testified that the Federal funds from which expenditures were to be made in 1938

on WPA projects were appropriated for the fiscal year ending June 30, 1938, (the fiscal year of the board of education begins on January 1, and, prior to January 1, 1938, the board had to appropriate for the entire year); that these funds were allotted by WPA to the individual States on the basis of total employment and established wages; that such allotment being made on a monthly basis necessarily changed from month to month, and that the State WPA re-allotted the funds allocated to it from month to month among the seven districts in this State, the distribution again being based upon the labor being employed during such month as well as upon wage rates, allowances for materials, equipment and other costs attending the employment of such labor. This witness testified, further, that among the types of work acceptable to WPA, as of December, 1937, when the budget for the year 1938 was being prepared, was the painting and decorating of school buildings; that because of the well-known fact that most of its buildings were in dire need of painting and decorating, the board made the appropriation of $250,000 to avail itself, if possible, of the opportunity of accomplishing this painting and decorating at a minimum cost to it by obtaining from WPA free labor having an approximate value of $1,000,000. He testified further that had the Federal government failed to make appropriations for WPA after June 30, 1938, the board, conformably to its agreement with WPA, would have been required to complete projects then in progress at its own expense. Again, using the Hyde Park High School as an example, if the board had appropriated $5000 to paint and decorate this building on the assumption the WPA would contribute labor which would otherwise cost the board $20,000 and WPA, after commencing work on this project of an estimated cost of $25,000, later abandoned the project, there would be insufficient funds on hand under the $5000 appropriation to finish the work in compliance with the contract between

the board and WPA. The impossibility or inadvisability of appropriating differently is also forcibly portrayed if, in the situation described, WPA decided that $30,000 instead of $25,000 should be spent in painting and decorating the Hyde Park High School, the board by its $5000 appropriation, would have denied itself WPA assistance on the improvement. Moreover, if WPA did not deem the Hyde Park High School project worthwhile the board would thus have been precluded from obtaining WPA assistance of a comparable amount on some other building.

Pursuant to the appropriation assailed, the board proposed and Federal authority was given for a project to paint and decorate school buildings under which the board guaranteed to spend $201,139 and the WPA agreed to contribute $804,043.65 in labor and materials. The manner in which this money was to be expended was broken down and itemized in detail, both as to the kind of labor employed and also as to material, supplies and equipment to be used. It may be observed that the breakdowns describe 294 school buildings on which painting and decorating covered by the project could be done. These buildings, and the equipment in them, were in a state of deterioration because of the previous lack of funds to enable the board to renovate, rehabilitate or decorate their interiors and exteriors.

Section 135½ of the School law, (Ill. Rev. Stat. 1939, chap. 122, par. 158a, p. 2899,) so far as itemization of expenditures is concerned, prescribes that the annual budget shall specify "(a) the several organization units, purposes, and objects for which appropriations are made, (b) the amount appropriated for each organization unit, purpose or object, and (c) the fund from or to which each amount appropriated is to be paid or charged." As we recently observed (*People* v. *Hamilton*, 373 Ill. 124) : "The Budget law is * * * principally for the purpose of requiring school taxes levied for a definite purpose to be applied to

that purpose. To accomplish this, the Budget statute requires that the object of the appropriation be stated, the amount necessary to accomplish that object be specified, and the fund out of which it is to be paid, named. The measure of specification or itemization is fixed by the statute in a general way, so as to set forth objects, amounts and sources of payment." It is not necessary to state each particular purpose for which a tax is levied where each purpose is properly embraced in one general designation. (*People* v. *Hamilton, supra; People* v. *Schiek,* 368 Ill. 353; *People* v. *New York, Chicago and St. Louis Railroad Co.* 353 id. 518; *People* v. *Eastern Illinois and Missouri Railroad Co.* 335 id. 245; *People* v. *Clark,* 296 id. 46.) This is particularly true where it is difficult to determine, in advance, the precise amount of the several items. Itemization requirements must be accorded a practical and common sense construction. *People* v. *New York, Chicago and St. Louis Railroad Co. supra; People* v. *Jackson,* 272 Ill. 494; *People* v. *Bowman,* 253 id. 234.

It is true, as the defendant maintains, that the taxpayer cannot be deprived of his substantial right to have separately stated the purposes for which a tax is levied under the guise of possible needs of the municipality. (*People* v. *Pitcairn,* 371 Ill. 616; *Siegel* v. *City of Belleville,* 349 id. 240; *People* v. *Chicago, Milwaukee and St. Paul Railway Co.* 326 id. 179.) The facts recounted disclose, however, that itemization of the appropriation in controversy to a greater degree than was actually done was not merely difficult, but impossible. The appropriation is not, as the defendant insists, for four separate purposes, (1) materials, (2) supplies, (3) expenses, and (4) supervision, but is, instead, for the single general purpose of "painting and decorating." A detailed description of the materials, supplies, expenses and supervision incident to the painting and decorating of the school buildings was unnecessary. A levy by the board of education of $5,770,900 for "new

buildings," this court has recently decided, (*People* v. *Hamilton, supra,*) need not be further itemized to show the different amounts for buildings in process of construction and to be constructed, the sum levied being specified in the budget as part of the building fund, as is the appropriation to be expended in conjunction with WPA in the present case. Had the appropriation been made for "painting and decorating" without further description, its validity would be unquestioned. (*People* v. *Hamilton, supra.*) Obviously, the improvements included items of materials, supplies, expenses, and supervision. The fact the board added that the proposed painting and decorating entailed the purchase of supplies and the hiring of labor does not impair its legality. The organization unit of this appropriation is specified, namely, "70," the organization unit for special accounts not appropriated for elsewhere. Similarly, the code number, "3," indicates that the appropriation is to be paid out of the building fund. "Z" is the code letter for miscellaneous or contingent expenditures not otherwise appropriated for, and the number "600" indicates that the expenditure is for maintenance of plant under the building fund. The plain object of the appropriation assailed is to provide funds to pay the board's share of painting and decorating its school buildings in conjunction with WPA. The objective of itemization requirements is to give the taxpayer information and also an opportunity, if he desires it, to object to unjust and illegal levies and assessments. (*People* v. *Pitcairn, supra; People* v. *Chicago and Northwestern Railway Co.* 359 Ill. 435.) The item in controversy specifies a single general purpose, namely, the maintenance of school buildings, with adequate certainty to enlighten the taxpayer of the purposes for which the money is to be expended. It satisfies the requirements of the applicable statute.

The defendant also contends that the appropriation is not for a corporate purpose. To support this contention,

defendant argues that the primary purpose of the appropriation was to afford relief, and that since the furnishing of public relief is not a governmental function of the board of education the levy is for a non-corporate purpose. Long ago, in *Taylor* v. *Thompson,* 42 Ill. 9, this court announced that the words "corporate purpose" should not receive a narrow or rigid construction, and a tax for corporate purpose was defined in comprehensive terms as "a tax to be expended in a manner which shall promote the general prosperity and welfare of the municipality which levies it." These observations have since met with consistent approval. A "corporate purpose" for which taxes may be levied by a municipality, it is now well settled, is such as is germane to the objects of the creation of the municipal corporation or has a legitimate connection with those objects and a manifest relation thereto. (*People* v. *Kelly,* 369 Ill. 280; *Kocsis* v. *Chicago Park District,* 362 id. 24.) The painting and decorating, as narrated, was to be done on school buildings owned by the board of education. Manifestly, the board may appropriate for the maintenance of its property and, in particular, such necessary improvements as "painting and decorating." The primary object of the appropriation attacked is a legitimate corporate purpose and the mere fact that WPA contributions may lighten the taxpayers' burden of financing the improvement does not destroy the corporate character of the expressed purpose of the appropriation. From the record it is disclosed that the board of education pays for the materials and supervision of projects proposed by it. On the other hand, the WPA meets the labor expense. The appropriation to which objection was made is for "painting and decorating" in "conjunction with" and as sponsor of WPA projects and is not, as urged, a contribution to WPA to be spent by the Federal agency. So far as the record discloses, the expenditure of the board of education's funds is under the control and direction of its own corporate authorities. Since

the board could legally bear all the expense attending the improvements, it follows, necessarily, that it is not precluded from accepting Federal aid in meeting a portion of this legitimate expense. The defendant's objection that the levy was not for a corporate purpose is without merit.

The county clerk also extended a rate of 98 cents for taxes levied by the Chicago Park District. This rate included a levy of .017965 for the following appropriation in the annual appropriation ordinance of the park district for the year 1938: "For the amount necessary to be ·expended under the direction of the Board of Commissioners of the Chicago Park District for sponsor's contributions of labor and material for and under projects of the Works Progress Administration of the United States of America (other than those works above named) for the construction, rehabilitation, repair or improvement of lands, premises, buildings and structures belonging to said district. . . . $350,000.00." The testimony of the chief engineer of the park district describing the procedure to be pursued by all public corporations in obtaining labor free of charge is substantially the same as the testimony previously recounted with respect to the board of education. Our disposition of the defendant's contention concerning the validity of the levy of the board of education renders unnecessary a detailed review of its like contentions as to the appropriation of the Chicago Park District. The ordinance recites that the challenged item represents the park district's contribution of labor and material for WPA projects for the repair and improvement of the district's property. It is apparent that the main purpose of the item in question is to obtain the use and benefit of Federal funds for park purposes, and the itemized reference to purpose can be read only in connection with the WPA project. This appropriation bears a distinctive mark so that any one who cares to read it can understand its main purpose is that of working in conjunction with and limited to the Federal agency. Even

though the amelioration of needy citizens may have been a motivating factor, the principal and controlling object and purpose of the appropriation is the repair and improvement of the municipality's property. In consonance with our conclusion concerning the validity of the levy of the board of education, the appropriation of the Chicago Park District is for the single general purpose of the repair and improvement of park property, a proper corporate purpose of the district, and the appropriation, under the ordinance, can be expended only under the directions of the corporate authorities of the district, namely, its board of commissioners.

The judgment of the county court is reversed and the cause remanded, with directions to overrule the defendant's objections to the taxes levied by the board of education and the Chicago Park District.

*Reversed and remanded, with directions.*