(No. 28450.—

THE PEOPLE *ex rel.* Victor L. Schlaeger, County Collector, Appellant, *vs.* BUNGE BROTHERS COAL COMPANY *et al.*, Appellees.

*Opinion filed November 21, 1945—Rehearing denied Jan. 16, 1946.*

154

WILLIAM J. TUOHY, State's Attorney, and BARNET HODES, Corporation Counsel, (JOSEPH F. GROSSMAN, OTHO S. FASIG, EMMETT HARRINGTON, and J. HERZL SEGAL, of counsel,) all of Chicago, for appellant.

ROBERT N. HOLT, and SCOTT, MACLEISH & FALK, both of Chicago, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

The county collector has appealed from a judgment of the county court of Cook county sustaining certain objections to the collector's application for judgment and order of sale for 1941 delinquent taxes. Appellees paid the taxes under protest, and, in accordance with section 194 of the Revenue Act of 1939, (Ill. Rev. Stat. 1939, chap. 120, par. 675,) filed objections asking a refund of the portions of the tax alleged to have been illegally exacted.

The first item involved is the appropriation and levy of the city of Chicago for the city relief fund, to reimburse loans made to that fund from other idle city funds during a portion of the fiscal year prior to the collection of 1940 taxes in the amount of $578,577.27. This item represents the difference between the sum of $2,810,000, borrowed from idle funds, and the amount estimated by the city to be available from cash on hand and from collections of the 1940 tax to repay such borrowed funds.

The appropriation for the city relief fund, as set out in the 1941 appropriation and levy ordinances, is as follows:

"For relief of poor and indigent persons, as pro-
vided by law . . . .............................. $4,821,422.73
    Loss and cost in collection of taxes............. 600,000.00
    Liability for reimbursement of advances made by
other City funds for relief purposes............... 578,577.27

    Total for City Relief Fund................... 6,000,000.00"

Appellant insists that under section 1 of article 8 of the Cities and Villages Act, in force at the time of the passage of the appropriation and levy ordinances of 1941, (Ill. Rev. Stat. 1939, chap. 24, par. 123,) the city was empowered to levy taxes for the relief and support of all poor and indigent persons lawfully resident therein, to the extent of $6,000,000, and that under section 2 of the Illinois Emergency Relief Commission Act, as then in force, (Ill. Rev. Stat. 1939, chap. 23, par. 394,) in order to participate in State contributions to that purpose, the city was required to levy at least a 3-mill tax, which approximates $6,000,000; and so it was necessary to levy a tax of $6,000,000 for the years 1940 and 1941.

Counsel for appellant say that not enough was collected from the 1940 levy for relief to repay the balance of $578,577.27 so borrowed, and since the city owed the duty to repay the loans procured . from idle funds, the appropriation and levy were valid. Appellees, on the other hand, insist that it was incumbent on the city and its officers to so limit its expenditures during the year 1940 that enough would be collected from the levy made to meet the demands on the fund and at the same time pay off the loans from idle funds, and that the city is powerless to repay this loan except from the 1940 levy when collected.

Municipal officers charged with the duty of protecting the credit of the municipality are presumed to do their duty. It is settled in this State that liabilities arising dur-

ing the year for which the levy is made may be met out of monies borrowed temporarily from other idle funds. Of course, where this is done, a legal duty rests upon the municipality to restore such funds, and it has been held, where the loan was made to pay bonds and interest, that a tax may be levied to repay such loan, where, through inability to collect, the levy for that year does not yield sufficient funds to complete such repayment. *Gates* v. *Sweitzer*, 347 Ill. 353; *People* v. *New York Central Railroad Co.* 355 Ill. 80.

Appellees argue that the city has no authority to levy a tax in the year 1941 to reimburse other city funds for advances made to the poor-relief fund in the year 1940; that since the city appropriated $6,000,000 for poor relief in each of the years 1940 and 1941, and section 2a of article 7 of the Cities and Villages Act (Ill. Rev. Stat. 1939, chap. 24, par. 102,) forbids the making of further appropriations in any year after the passage of the annual appropriation ordinance, the transfer of idle funds to the poor-relief fund could be legally only an advancement of idle monies in anticipation of the collection of the resources of the poor-relief fund levied for 1940 and could be paid only out of 1940 poor-relief taxes when collected. They argue that such advances or transfers operate very much the same as money raised by a sale of tax anticipation warrants and can be paid only from 1940 taxes levied for poor relief when collected.

Appellant relies upon the case of *Gates* v. *Sweitzer*, 347 Ill. 353. In that case money was borrowed from idle funds to pay certain bonds and interest as they accrued. This loan was made against the 1927 levy for the bond and interest fund. In 1929 a levy was made to repay an unpaid balance of that loan. It appeared that the park commissioners were unable to collect sufficient of the tax levied to complete the repayment of this loan. It was there argued that as the park commissioners had, in their

original levy, levied all taxes necessary to meet that expense, they had no power to levy a second tax for that purpose, and, further, that the repayment of funds borrowed to pay bond and interest accruals should be made out of taxes already levied for bond and interest purposes as such tax was collected. It was there pointed out, however, that taxing authorities are required to use sound business judgment to prevent default, and that there is no prohibition against levying a subsequent tax to reimburse a fund so used, where, in the case of bonds and interest, the taxing authorities are unable to collect sufficient funds from the levy against which the loan is made to complete repayment thereof. Liability for reimbursement in such a case is general and not limited, as in case of tax warrants. The obligation in such a case is a debt against the taxing district. (*Gates* v. *Sweitzer,* 347 Ill. 353.) This is not such a case.

Counsel for appellant say that it is not disputed that on January 1, 1941, there remained unpaid that part of the loan represented by the amount here objected to. The city's estimate required to be filed at the beginning of the fiscal year 1941, as shown in the additional abstract filed by appellees, contained the items:

"Cash . . . . . . . . . . . . . . . . . . .$  364,335.25
Net taxes receivable. . . . . . . . .  1,867,087.48"

thus making total assets of $2,231,422.73. The loan from idle funds consisted of two items. The first, made on July 31, 1940, was of $1,910,000. This was on November 26, 1940, raised to $2,810,000. It is seen that by deducting total current assets of $2,231,422.73 from the $2,810,000 borrowed, there remains the sum of $578,577.27, which is the amount sought to be levied here to pay the balance of the loan. In other words, the estimate indicates that the relief fund for 1940 lacks that much of assets to repay the loan. This estimate was made approximately sixty days before the 1940 tax was put in collec-

tion. The additional abstract of record shows that in the 1940 appropriation and levy there was appropriated and levied $6,000,000, of which $600,000 was for loss and cost, leaving $5,400,000 for relief. It does not appear why the estimate of net taxes receivable from the 1940 levy should be no more than $1,867,087.48, when the appropriation and levy for relief was in the sum of $5,400,000. Nor does it appear how it could be determined, on January 1, 1941, what the net taxes receivable in that appropriation would be. This was approximately sixty days before the 1940 levy went into collection.

If "net taxes receivable" means net after accounting for outstanding obligations unpaid and contracted for against the 1940 appropriation, one of two things seems apparent, either such obligations were for other than repayment of the loan and were in excess of the amount appropriated for relief, or there was an anticipated failure of collection amounting to $3,532,912.52 of the 1940 levy. There is nothing in the record explaining such anticipated failure of collection, and it seems unreasonable to suppose such would occur. While taxes are presumed to be legally levied and the burden is on the objector to show otherwise, in this case the estimate made by the appellant indicates that no reason existed why there would not be sufficient collection in the 1940 levy to meet this alleged deficit, in which case the city was without power to make a levy to repay this balance of the sum borrowed.

In the *Gates* and *New York Central cases* the record showed a failure to collect the tax. In those cases the tax was levied in 1927 and the levy to make up the deficit in repayment of the loan was made in 1929. No such failure to collect is shown by the record here and there obviously could be no such showing since the 1940 taxes were not yet in collection. The *Gates* and *New York Central cases* are authority only for the proposition that where failure in collection of taxes results in inability to meet

sums borrowed to aid the bond and interest fund, a levy may be made to repay the balance of the sum borrowed. Whether, in a case of failure to collect sufficient of the 1940 levy for relief to repay all the funds borrowed, such could be made the basis of a levy to repay the unpaid balance of such funds is not before us, since there is no showing of failure or deficiency in collection of the 1940 levy, as obviously there could not be at the time the 1941 estimated appropriation and levy ordinances were adopted. The record affords no justification for the levy of this sum or any sum to repay the balance of idle funds borrowed.

Counsel for appellant argue that as the total appropriation and levy was for but $6,000,000, which amount it was not only authorized to levy but, to get the assistance of the State it must levy, the taxpayer is not harmed. The fact that the city might have levied this amount for another purpose does not aid in the matter of the legality of this levy. The court did not err in sustaining this objection.

Appellant next contends that the court erred in sustaining objections to an alleged overestimate of tax anticipation warrant liabilities amounting to $1,200,067.47. The facts are these: The city passed its 1941 appropriation ordinance January 9, 1941. Pursuant to section 2a of article 7, above cited, the city, in computing its estimate of net taxes receivable from the 1940 levy of a total tax extended of $37,000,000, deducted from the amount of the levy, in addition to loss and cost, the sum of $27,750,000 for principal of tax anticipation warrants outstanding on January 1, 1941, and $68,289.90 for interest thereon, accrued to January 1, 1941. The balance of net taxes receivable from the 1940 levy was $3,631,710.10. The report of the comptroller of the city for the year 1940 showed outstanding, as of January 1, 1941, tax anticipation warrants, against 1940 taxes levied, of $26,550,000 and interest thereon of $68,222.43, or a total of $26,618,222.43, plus loss and cost, $5,500,000, making $32,168,222.43 in-

stead of $33,368,289.90 as determined in the appropriation ordinance. The amount shown by the appropriation ordinance as outstanding tax anticipation warrants and interest thereon to January 1, 1941, exceeded the amount actually outstanding in the sum of $1,200,067.47.

Appellant points out that under section 17 of article 7 of the Cities and Villages Act (Ill. Rev. Stat. 1939, chap. 24, par. 117,) the city comptroller is required, on or before December 1 of each year, to submit a separate balance sheet for each fund of the corporation, showing by classes the estimated current assets and liabilities thereof as of the beginning of the next fiscal year and the amount of such assets available for appropriation in such year, and argues that it is impossible to estimate with exactness the amount of the tax warrants which will be outstanding one month after the report is required to be made. Counsel overlook, however, that section 17 also requires the comptroller to, within the first fifteen days of each fiscal year, submit to the city council a revised report on all matters in that paragraph specified, upon the basis of such information as shall then be available, and may submit amendments of such report at any time prior to the passage of the annual appropriation bill. It is apparent, therefore, that the actual figures or balances as of January 1, 1941, were known to the comptroller and it was the duty of the city council before passing the 1941 annual appropriation ordinance to ascertain from the comptroller the exact amount of outstanding tax anticipation warrants and the interest thereon to January 1, 1941, so that the correct amount thereof could be included.

Appellant argues that appellees have failed to carry the burden of showing the abuse of discretion by the city council in estimating its assets and liabilities when they single out but one item and show it is erroneous; that appellees should have shown by proper proof that the overestimate of one liability was not offset by other com-

pensating overestimates of assets or underestimates of liabilities; that in any event if the council has thereby underestimated taxes receivable, then at the end of 1941 the assets will be on hand and will be taken into consideration in the appropriation ordinance for 1942. The answer to that argument is that appellees proved, and appellant does not question the correctness of the proof, that the report of the comptroller, filed after January 1, 1941, shows the outstanding tax anticipation warrants, with interest thereon to January 1, 1941, aggregated $26,618,222.43 and not $27,818,289.90 as stated in the appropriation ordinance, which proved the error complained of. If there were other compensating estimates by appellant which offset the one objected to, so that appellee was not harmed, it was appellant's duty to prove that fact. The record shows that a levy was made upon an underestimate of net taxes receivable of $1,200,067.47. Each year's budget, appropriation and levy speaks for itself. A taxpayer is entitled to have presented to him a tax statement based upon a valid levy, not on an admission of error and a promise that the error will be corrected in the next budget, appropriation and levy. It was not error to sustain said objection.

Appellant next contends that it was error to sustain the objection to the levy of $100,000 as the city's contribution to a W.P.A. project in connection with the construction of the Chicago Municipal Airport Terminal Building and facilities. The ground of this objection is that the levy was not sufficiently itemized but is purely descriptive and without any attempt to inform the taxpayers of the purpose for which the money is to be expended.

The appropriation objected to is as follows: "84-S-68 City contribution to W.P.A. project in connection with construction of Terminal building and facilities . . . $100,000." Appellant insists this appropriation is for a single purpose and proper; that the city council disclosed the difficulty in determining the exact purpose by designating the appro-

priation as an "S" account, hereinafter referred to and defined. It is also said that construction of a terminal building and facilities is a single general purpose and that no benefit would accrue to the taxpayer to break the items down into subpurposes such as excavation, bricklaying, steel work, etc. The question is whether the appropriation is for a single purpose.

This court has often held that it is not necessary to state each particular purpose for which a tax is levied where each purpose is properly embraced in one general designation. (*People ex rel. Toman* v. *Estate of Otis,* 376 Ill. 112; *People ex rel. Lindheimer* v. *Hamilton,* 373 Ill. 124; *People ex rel. Gill* v. *Schiek,* 368 Ill. 353.) This is particularly true where it is difficult to determine, in advance, the precise amount of the several items. Itemization requirements must be accorded a practical and common-sense construction. (*People* v. *Estate of Otis,* 376 Ill. 112; *People ex rel. Schaefer* v. *New York, Chicago and St. Louis Railroad Co.* 353 Ill. 518; *People ex rel. Dale* v. *Jackson,* 272 Ill. 494; *People ex rel. Abt* v. *Bowman,* 253 Ill. 234.) However, the taxpayer cannot be deprived of his substantial right to have separately stated the general purposes for which a tax is levied under the guise of possible needs of the municipality. (*People* v. *Estate of Otis,* 376 Ill. 112; *People ex rel. Wangelin* v. *Pitcairn,* 371 Ill. 616; *Siegel* v. *City of Belleville,* 349 Ill. Ill. 240.) A taxpayer is entitled to know definitely the object of the appropriation. (*People ex rel. Toman* v. *Advance Heating Co.* 376 Ill. 158.) In *People ex rel. Wangelin* v. *Illinois Central Railroad Co.* 361 Ill. 590, it was held that an item for "city hall, furnishings and repairs $2250" was not sufficiently separated. In *People* v. *Pitcairn,* 371 Ill. 616, it was held that the words "work supported by government aid" are purely descriptive and fail to specify the purpose of the levy with any degree of particularity; that the mandate of the statute is not satis-

fied, even though the item specifies a single general purpose, where the expense incident to the work is to be partially met by Federal funds, and, as no source of enlightenment was given or even suggested to the taxpayer, the item was uncertain, vague and indefinite. Are facilities a part of the building? If not, how much of the $100,000 is to be expended in the construction of the building and how much for facilities? An appropriation and tax levy for the erection of new buildings is for a single purpose and need not be further itemized to show the different amounts for buildings in process of construction and to be constructed. (*People* v. *Hamilton,* 373 Ill. 124.) Likewise, an appropriation by a board of education for "maintenance of plant, materials, supplies and expenses and supervision of painting and decorating in conjunction with W.P.A. Projects" was held, in *People* v. *Estate of Otis,* 376 Ill. 112, to be for a single purpose and need not be further itemized.

The word "facilities" is not a technical word but one in common use, and its meaning is to be found in the sense attached to it by approved usage. Standard lexicographers give "aid," "assistance," and "help" as synonyms or equivalents of "facility." Thus, books, maps, globes and charts are facilities to the imparting of knowledge. The meaning of the word is not, however, limited to inanimate bodies or things. A school with a compliment of pupils in every room, but lacking teachers, would certainly not have facilities to carry on educational work. Without a crew to man his vessel, the captain of a ship would not have the necessary facilities to enable the ship to sail. In *Nekoosa-Edwards Paper Co.* v. *Minneapolis, St. P. and S. S. M. Ry. Co.* 217 Wis. 426, 259 N.W. 618, the railroad refused to pay certain amounts arising under contracts for terminal switching. The statute made it unlawful for any railroad to receive from any shipper less compensation for the transportation of property, or for

any other service, in consideration of such shipper furnishing any part of the facilities incident thereto. In sustaining a judgment in favor of the shipper, the Supreme Court of Wisconsin held that the language of the proviso is as broad as the language of the prohibition; that the word "facility" is a very inclusive term and was intended to embrace anything which aided or made easier the performance of the duty which the carrier was required to perform. (*Nekoosa-Edwards Paper Co.* v. *Railroad Com.* 193 Wis. 538, 213 N.W. 633.) It was also there held that a switch engine and its crew constitutes a facility within the meaning of the statute.

In the case before us, the appropriation was of funds to be contributed in connection with the construction of a terminal building and facilities. The term "facilities" is vague and indefinite. It does not apprise the taxpayer how much of the appropriation is for the building and how much is for facilities. Nor is there anything stated in the appropriation as to what shall constitute facilities. It was not error to sustain the objection to this item.

It is next urged that it was error to sustain objections to the appropriation for liability to the working cash fund. Appellant admits this is the same item the validity of which this court sustained in *People ex rel. Toman* v. *Baltimore & Ohio & Chicago Railroad Co.* 381 Ill. 585, and *People ex rel. Schlaeger* v. *Brand,* 389 Ill. 298, but insists that notwithstanding the holding in those cases, on authority of *Town of Aurora* v. *Chicago, Burlington and Quincy Railroad Co.* 119 Ill. 246, the city council properly treated the money as belonging to the working cash fund. That contention was answered by this court adversely to appellant in the *Brand case.*

Appellant next contends that it was error to sustain objection to the item: "Expense of issuance and redemption of tax warrants and bonds." This item amounted to $20,000. Appellant insists that the last expression of this

court in *People ex rel. Schlaeger* v. *Reilly Tar and Chemical Corp.* 389 Ill. 434, settles in the affirmative the issue as to whether this item is for a single purpose. Appellees, on the other hand, contend it is not, and cite *People ex rel. Wangelin* v. *Illinois Central Railroad Co.* 361 Ill. 590, where it was held that city appropriations and levy for a city hall, furnishings, repairs and the like, were not properly itemized. This challenged item bears a designation by the letter "S." The record shows that such designation referred to temporary unclassified items and is for expenditures for specific purposes which were required to be found itemized as expended according to standard accounts, and that appropriation is to be made to that account only when it is impracticable to estimate in advance the classification under standard accounts as expended.

In the case before us, the expense of issuance and redemption of tax warrants and bonds cannot be known a year in advance, yet this is a necessary operating expense of one of the departments of the city's financing. It was error to sustain this objection.

Appellant next argues that it was error to sustain the objection to the appropriation and levy for dues to be paid to the Illinois Municipal League, $3000; dues to be paid to the United States Conference of Mayors $3000, and the purchase of works of art $2000. The trial court held these appropriations were not for corporate purposes. We are of the opinion that so far as the payment of dues to the Illinois Municipal League and the United States Conference of Mayors are concerned, these represent not appropriations to private corporations, as argued, but appropriations to the city to be used for payment of dues in these organizations by reason of the benefit to be derived from the service given by such corporations. It seems clear that the discussion, by mayors and other city officials, of problems affecting the well-being of their respective cities, and the study of conditions affecting taxpayers of

municipalities, are public purposes, and moderate appropriations for those purposes are justified. As to the item of $2000, however, for the "purchase of works of art created by local talent," it is difficult to see therein a public purpose. It is argued that these may be used as furnishings in buildings, but the appropriation does not specify such a purpose. This is a small item but the question is one of the power of the city to levy a tax for it. Were it a matter of a levy for furnishing a building, for which the city may desire to purchase, as part of the furnishings of such building, a painting or paintings, a different question would be presented. But the corporate powers of a city do not include conducting an art school or inducements to local artists, and commendable though that purpose may be, it is necessary that there be found, in the grant of powers to cities, the power to levy taxes for that purpose before such tax can be sustained. Appellant argues, however, that under section 6 of an act providing for the creation of art commissions in municipalities, (Ill. Rev. Stat. 1939, chap. 24, par. 622,) the General Assembly considered the purchase of works of art to be for a general purpose. An examination of that act, however, discloses that section 6 grants no authority to the city to purchase works of art by appropriation and tax levy, as is here attempted. By reason of lack of power of the city to levy this tax, it was not error to sustain the objection thereto.

The judgment of the county court is affirmed as to the objections hereinabove specified as properly sustained, and reversed as to the items herein specified as proper levies, and the cause is remanded with directions to the county court to enter an order in conformity with the views herein expressed.

*Affirmed in part and reversed in part and remanded, with directions.*