(No. 30003.— ▮▮▮▮▮▮▮▮▮

THE PEOPLE *ex rel.* Victor L. Schlaeger, County Collector, Appellant, *vs.* W. J. DENNIS & Co., Appellee.

*Opinion filed May 22, 1947—Rehearing denied September 15, 1947.*

WILLIAM J. TUOHY, State's Attorney, RICHARD S. FOLSOM, and KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, all of Chicago, (JOSEPH B. FLEMING, THOMAS M. THOMAS, and THOMAS F. SCULLY, of counsel,) for appellant.

SCOTT, MACLEISH & FALK, of Chicago, (ROBERT S. CUSHMAN, and JOHN J. O'BRIEN, JR., of counsel,) for appellee.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

The appellee, W. J. Dennis & Co., filed a number of objections to the 1943 tax levy of the board of education of the city of Chicago, after first having paid the same under protest. The county court sustained six of

the objections made by appellee.' The substance of all the objections was that liabilities had been overstated under circumstances when they could have been fixed with certainty instead of being estimated, and in this manner resulted in an excessive levy for the particular items. The number and title of the objections are as follows: Objection No. IX, Building Fund "Audited Vouchers" estimated $1,429,052.60, actual figure $816,804.02; objection No. X, Building Fund "Asset Cash" estimated $11,094.35, actual figure $41,908.76; objection No. XI, Free Text Book Fund "Audited Vouchers" estimated $548,140.47, actual figure $286,027.08; objection No. XII, Free Text Book Fund "Purchase Orders Payable" estimated $306,923.68, actual figure $121,379.08; objection XIII, School Playground Fund "Audited Vouchers" estimated $164,845.82, actual figure $22,931.73; and objection XIV, School Playground Fund "Interfund Loans" estimated $164,191.55, actual figure $139,761.45. These objections were all sustained, and the collector appeals directly to this court since the revenue is involved.

Counsel agree that the same issue is involved in each of the six objections, and therefore have argued only objection IX. This objection arises out of the fact that the building fund for the budget of 1943 contains the following: Under "Estimated Current Liabilities" is the item "Audited Vouchers $1,429,052.60." The audit of the books of the school board, under date of July 22, 1943, shows the actual amount of audited vouchers for the balance of 1942 to have been $816,804.02, thus creating, it is claimed, an overestimate of current liabilities in the sum of $612,248.58, which the county court held to be excessive, illegal, and sustained objections thereto.

The correctness of this decision depends upon the construction of certain sections of the law in force at the time, applying to school districts having a population in

excess of 500,000. Sections 129 and 130, of the School Law (Ill. Rev. Stat. 1941, chap. 122, pars. 152, 153,) provide for the appointment by the board of education of a business manager who shall have general charge and control, "subject to the approval of the board of education, of all purchases, the making of contracts and leases, the condemnation of sites, the erection, construction, alteration and repair of school buildings," and "perform the duties prescribed in section 130½ of this Act."

Section 130½ (par. 153a,) requires the business manager on or before the first day of December of each year to submit to the board of education a report containing, among other things, a separate balance sheet for each fund under the control of the board of education, showing by classes the estimated current assets and liabilities as of the beginning of the next fiscal year. The fiscal year involved began January 1, 1943, as provided in section 135. (Par. 158.) The liabilities provided to be estimated by the business manager are: (a) final judgments and accrued interest; (b) the principal of tax anticipation warrants and temporary loans and accrued interest; (c) amounts for which the board of education is required to reimburse the working cash fund.

In addition to this balance sheet section 130½ requires detailed estimates, by funds, of all taxes to be levied, and also estimates, by funds, of the amount it will be necessary for the board of education to appropriate for expenditures or charges to be made or incurred during the next succeeding fiscal year, and "Such estimates shall be so classified as to show the different objects and purposes for which such expenditures or charges are to be made or incurred and the amount required for each object or purpose." The section then provides that within the first fifteen days of each fiscal year "the business manager shall submit to the board of education a revised report on all matters herein specified, upon the basis of *such information as shall then*

*be available,"* and "within ten days after the first regular meeting of the board of education occurring not less than seven days after the adoption of the school budget, to report to the board of education the extent to which and in what respects, if any, the appropriations contained in such school budget in his judgment exceed the appropriations which such board of education is by law authorized to make."

The fiscal year of the school district begins on the first day of January. Section 135½ (par. 158a,) requires the budget to be made within the first sixty days of the fiscal year; and the statute provides the form of the budget, substantially along the lines of the report to be made by the business manager. Section 134 (par. 157,) provides the board of education shall, as often as yearly, and may as often as is necessary, appoint certified public accountants to examine the business methods and audit the accounts of the board, and report thereon, together with recommendations, etc., and to spread the same upon the records of the board.

The appropriation ordinance was adopted January 13, 1943. The record does show that the business manager of the board of education made a report on December 1, 1942, in which he estimated what the assets and liabilities of each fund would be on January 1, 1943; but there is no showing that the business manager, within the first fifteen days of the fiscal year, submitted a revised report, upon the basis of information he then had, to the board of education; nor is there any showing that within the time fixed by law, after the adoption of the appropriation ordinance, he made a report of the extent to which, and in what respects, if any, the appropriations in the budget, in his judgment, exceeded the appropriations which the board was authorized by law to make. Since the report of the business manager contained the information from which

the budget was made, the record should show the board acted upon it, to comply with the law.

Appellee relies largely upon *People ex rel. Schlaeger* v. *Bunge Brothers Coal Co.* 392 Ill. 153, which, in substance, holds that an appropriation and levy, based upon an estimate of outstanding tax anticipation warrants and interest, is invalid and in excess of the amount actually outstanding upon the basis of what is required in section 9-68 of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1941, chap. 24, par. 9-68,) which provision is almost identical in its terms with section 130½ of the School Law.

Appellant relies upon *People ex rel. Toman* v. *Mercil & Sons Plating Co.*, 378 Ill. 142, as sustaining their position, and quotes from page 152 to the effect that all liabilities shall be estimated. We have frequently held that a decision of this court must be read in connection with what was actually decided, and with what the language used applied to. (*City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506; *White* v. *Seitz*, 342 Ill. 266.) In the *Mercil case* the objector contended there had been an overestimate of liabilities, and a consequent reduction in amount of available assets from former years. The assets *estimated* to be available were taxes of former years, $3,340,013.02. This is what was left after *accounts payable* of over $8,000,000 had been deducted. No question was raised as to the correct amount of accounts payable, but the claim was made they were void as in excess of the constitutional limit. The language appellant quotes was used in holding that a municipality was not required to decide the legality of such accounts but had a right to take them into consideration in the estimate of liabilities. The situations there and here are not parallel, and the section of the Cities and Villages Act similar to section 9-68, *viz.*, Ill. Rev. Stat. 1937, chap. 24, par. 102, was not applicable nor sought to be invoked. In fact, on page 153, we pointed out why accounts payable should be estimated, where the amount is

not disputed but the legal liability is in dispute. There is nothing in that case which holds that an *amount known*, or to be determined in a definite way, could be estimated.

Section 130½ seems to be for the express purpose of enabling the board of education to know, with reasonable certainty, what the assets and the liabilities of the school district are. To that end the business manager is required to make a report within the first fifteen days of each fiscal year, which would be before January 15. And it also requires that, within ten days after the meeting has been had at which the budget and appropriation ordinance has been adopted, another report shall be made showing in what respect, if any, the appropriations exceed those authorized by law. Matters known with certainty must be correctly stated, and other parts of the budget must follow the reports of the general manager as to items known, and a *bona fide* estimate of those that cannot be stated with certainty.

The board of education did not wait for fifteen days of its fiscal year to elapse before it adopted a budget. There is no showing that it acted on a report from its business manager within the first fifteen days, nor that it received or acted upon a report after the adoption of the budget, showing in what respect, if any, the appropriations were illegal or excessive. The record shows the bills were payable monthly, and a supplemental report would presumably have shown the excessive amount estimated to pay "audited vouchers."

The term "audited vouchers" used in the budget, so far as it infers that the vouchers must be audited by the accountants provided for in section 134, is not authorized by anything found in the statute. The use of the term "audited vouchers" is in itself a misnomer. If they were audited before the budget is made the amounts would be known exactly, which would bring it within the *Bunge case*. If the amounts were known by the business man-

ager but not yet audited, they presumably would have been correctly reported to the board, and would have been then proper to include in the budget.

Some complaint is made that a *prima facie* case was not made by the objector. We do not think this objection is well founded. The levy was substantially 75 per cent excessive. The board did not follow the method required by the statute in making up the budget, and their own audit made some months afterwards shows this excess. It is not competent for the taxing body to say that it made an estimate but did not make it in the manner required by law, and that it is therefore entitled to levy and collect upon that basis. The board of education excuses this excess appropriation by saying it was necessary to pass the appropriation ordinance early so that a levy may be made to enable them to anticipate the revenue to pay bills for the early part of the year, because of the shortage of current funds. This situation does not excuse the disregarding of the requirements of the law. The remedy for such an emergency is with the legislature, and not by the avoidance of the plain terms of the statute.

The order of the county court of Cook county in sustaining this objection was correct. Since it is agreed that substantially the same points are involved in the other five objections, the county court's order on them will likewise, without further comment, be sustained.

The judgment order of the county court is affirmed.

*Judgment affirmed.*