NEKOOSA-EDWARDS PAPER COMPANY and others, Respondents, vs. RAILROAD COMMISSION OF WISCONSIN, Appellant.

*April 6—October 11, 1927.*

*Carriers: Shipper furnishing facilities to carrier: Rebates: Rentals or allowances to shipper: Supervision of railroad commission: State policy to conform to federal law.*

1. A tariff prescribing the rental to be paid a shipper for the use of its facilities in switching intrastate shipments at its plants, which service the railroad was required to perform, is not

violative of sec. 195.39, Stats., the word "facilities," as used in sub. (2) of said section, embracing anything which aids the performance of a duty which the carrier was required to perform, and includes a switch engine and its crew.  pp. 546, 547.

2. Said sec. 195.39, making it unlawful for a railroad to receive less compensation for carriage in consideration of the shipper furnishing part of the facilities, is remedial, and designed to regulate the relations of carrier and shipper so as to prevent discrimination as between shippers and localities.  p. 545.

3. It is the policy of the supreme court to construe the law of this state so that it will conform as nearly as possible to the federal law and practice when applied to the same, subject matter. p. 548.

4. Sub. (2) of said sec. 195.39 is intended to provide substantially the same matters provided in the Interstate Commerce Act (36 U. S. Stats. at Large, ch. 309, p. 551), and a carrier may be compelled to file with the railroad commission proposed schedules under which plaintiff shippers would, be allowed a stipulated amount per car for terminal services performed at their respective plants.  p. 548.

APPEAL from a judgment of the circuit court for Dane county: AUGUST C. HOPPMANN, Circuit Judge.  *Affirmed.*

Action brought to compel the *Railroad Commission* to .file certain proposed tariffs under which the plaintiffs would be allowed a stipulated amount per car for terminal switching performed by them at their respective plants.  The defendant refused to accept and file the tariffs on the ground that the proposed tariffs amounted to a violation of sec. 195.39, Stats., and that the defendant was therefore without jurisdiction.

The facts necessary to present the question decided are briefly as follows: The plaintiffs own and operate large paper mills with the facilities incident thereto, including a network of spurs and switch tracks.  One plaintiff has four and another has seven miles of trackage.  Plaintiffs individually own switch engines, hire crews therefor, and do all the switching at their plant, including intraplant switching.  They take cars from the receiving tracks to their respective plants to the point of loading or unloading and return them to the receiving track when empty or loaded

ready for outbound movement. Originally the carriers placed inbound cars at the plant where they were to be loaded or unloaded as the case might be, and took the cars from the point of unloading or loading when they were ready for the outbound movement. Some of the plants were served by two, some by three, and one by four separate railway systems. This made it necessary for the switching crews of the different railway systems to go upon the premises. It was difficult to arrange convenient times. They often interfered with each other's movements and also with various movements of cars within the plant, and an arrangement was finally entered into by which the plaintiffs took the cars from the receiving track, loaded and unloaded, and placed them at the plants where they were to be loaded and unloaded, and when the cars were ready for the outward movement placed them again on the receiving track, from which they were taken by the carrier, so performing a service which prior to this arrangement had been performed by the carriers. It appears that this arrangement is more largely for the convenience of the plants than of the carriers. As the plants grew in proportion and the amount of intraplant switching increased, it became increasingly inconvenient to have the plant operations interfered with by the switching crews. When the whole movement, both that to be performed by the carrier and the intraplant movement to be performed by the plant, was done by one crew, the work could be organized and done much more expeditiously and economically. In order to arrive at the compensation, a system of cost accounting was installed and the amount of $1.50 per car was allowed for the services performed by the plant for the carrier. This was believed to be slightly below its actual cost to the carrier.

The arrangements between the plaintiffs and the carriers were put in the form of a tariff and tendered to the *Commission* with a request that it be filed. The defendant

refused to file these tariffs, and this action was begun to review the action of the defendant in denying the petition of the plaintiffs that the tariffs be filed. The trial court found in favor of the plaintiffs and judgment was entered accordingly, from which the defendant appeals.

Other material facts are stated in the opinion.

For the appellant there was a brief by the *Attorney General* and *Michael J. Dunn, Jr.,* assistant attorney general, and oral argument by *Mr. Dunn.*.

For the respondents there was a brief by *C. R. Hillyer* of Chicago, *Goggins, Brazeau & Graves* of Wisconsin Rapids, and *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *Mr. Theo. W. Brazeau, Mr. C. F. Smith,* and *Mr. Hillyer.*

The following opinion was filed May 3, 1927:

ROSENBERRY, J. The proposed tariffs, after the caption, were in substantially the same form. That tendered by the Chicago & Northwestern Railway Company is as follows:

"CHICAGO & NORTHWESTERN RAILWAY COMPANY.
*"Allowance for terminal switching at Wisconsin
Rapids, Wis.*

"On all carload revenue shipments, including trap cars containing 6,000 pounds or more of less carload revenue freight, destined to or coming from the plant of the *Consolidated Water Power & Paper Company,* the terminal switching service is performed by the *Consolidated Water Power & Paper Company* for the account of the Chicago & Northwestern Railway Company.

"The *Consolidated Water Power & Paper Company* will be paid for such service rendered by it for and in behalf of the Chicago & Northwestern Railway Company the actual cost of service performed as specified in monthly bills submitted to this company on all cars handled between points of interchange with this company and the first point at which cars are loaded or unloaded subject to a maximum payment of $1.50 per loaded car.

"The above allowance includes the handling of empty cars

in the reverse direction or empty cars handled preparatory to loading.

"Cars will be subject to demurrage rules and charges as shown in Agent W. J. Kelly's Demurrage Tariff No. 4—B, supplements thereto and reissues thereof, from the time of actual or constructive placement on the interchange track with the *Consolidated Water Power & Paper Company* until return to the same or another interchange track.

"(Applies on Wisconsin intrastate traffic only.)
"Issued June 16, 1922.    Effective July 25, 1922."

It is the contention of the plaintiffs that the carriers were obligated to bring cars and place them at the plant of the plaintiffs at the points where they were to be loaded or unloaded, as the case might be, and that such service was to be rendered by the carrier as a part of the line haul; that the tariff is a proper and lawful one and that it was the duty of the *Commission* to file it.

The contention of the defendant stated in the language of counsel is, "It [the defendant] is without jurisdiction to file the proposed tariffs because there is no provision in the statutes by which it is granted authority to accept and file such tariffs." The real basis of refusal is that in the opinion of the *Commission* the arrangement is in violation of sec. 195.39, Stats., and it is therefore the duty of the *Commission* not to file it.

No investigation was made as to the reasonableness of the charge. No contention is made here that if such a charge may be properly allowed that it constitutes a discrimination as to other shippers. The sole question presented is whether or not the arrangement violates sec. 195.39.

There is a great deal of argument and many statements of fact in other situations in the brief of defendant's counsel, but a study of the record in this case discloses no conflict of testimony as to the facts of this case. It appears that it has always been the custom for the carriers to make a first placement of cars to be loaded or unloaded, and the cost of making such placements was borne by the railway com-

panies and compensation therefor was included in the rate. Whatever the arrangements may be in other territories and other jurisdictions, there is no evidence that any different arrangement has ever prevailed in Wisconsin.

The material part of sec. 195.39 is as follows:

"(2) It shall be unlawful for any railroad to demand, charge, collect or receive from any person, firm or corporation a less compensation for the transportation of property or for any service rendered or to be rendered by said railroad, in consideration of said person, firm or corporation furnishing any part of the facilities incident thereto; provided, nothing herein shall be construed as prohibiting any railroad from renting any facilities incident to transportation and paying a reasonable rental therefor."

In disposing of the petition the defendant said:

"In conclusion we might point out that the supreme court of the state of Wisconsin has laid down the rule that this *Commission* must find specific authority for its acts 'within the four corners of the statutes creating it.' *Monroe v. Railroad Comm.* 170 Wis. 180, 174 N. W. 450. No such authority appears to exist in par. 2 of sec. 1797—22 for the acceptance by this *Commission* of tariffs permitting a carrier to pay the shipper for performing terminal switching service.

"The *Commission* therefore finds and determines that no authority exists for the acceptance by it of tariffs providing for allowances by railroads to industries for terminal switching performed by said industries.".

In its recitals the *Commission* expressly disclaims that any investigation has been made to determine the reasonableness or unreasonableness of the order, which as already indicated leaves nothing for consideration here except the lawfulness of the arrangement embodied in the tariffs.

The defendant considered sub. (14) of sec. 7904 of the Interstate Commerce . Act (Barnes' Federal Code, Supp. 1919–1924), supposed to cover a similar situation. It is as follows:

"If the owner of property transported under this act directly or indirectly renders any service connected with

such transportation, or furnishes any instrumentality used therein, the charge and allowance therefor shall be no more than is just and reasonable, and the commission may, after hearing on a complaint or on its own initiative, determine what is a reasonable charge as the maximum to be paid by the carrier or carriers for the services so rendered or for the use of the instrumentality so furnished, and fix the same by appropriate order, which order shall have the same force and effect and be enforced in like manner as the orders above provided for under this section." U. S. Comp. Stat. § 8583; 36 U. S. Stats. at Large, ch. 309, p. 551.

Under the Interstate Commerce Act the identical arrangement proposed by the tariffs tendered as applicable to intrastate commerce is approved as applicable to interstate commerce. In other words, the plaintiffs seek to have the defendant approve the identical arrangement as to intrastate commerce that is now allowed under the Interstate Commerce Act. The *Commission* was of the opinion that the quoted provision of the Interstate Commerce Act is much broader than sub. (2).

Upon the original disposition of the case the defendant said:

"The carriers did not claim that the allowance was based on 'renting any facilities incident to transportation,' and it appears to be undisputed that the allowance of $1.50 per loaded car to the industries is to be on account of the rendering of services by the industries in connection with the transportation. It is obvious, therefore, from the plain wording of the Wisconsin statute, that no allowances for any such services can be lawfully made in connection with intrastate traffic."

The tariff as proposed used the word "service" instead of "facilities," but the nature of the arrangement was fully disclosed in the tariff as tendered and upon the hearing. There was a motion for a rehearing, upon which the claim was set up that the arrangement amounted to a rental of a facility within the meaning of the Wisconsin statutes. No

further order or determination appears to have been made by the *Commission,* and a review is sought here of the first order dated November 25, 1923.

A determination of the question presented here depends upon the construction to be placed upon sub. (2) of sec. 195.39. If that subsection be given a narrow and restricted meaning with no reference to the nature of the subject matter to which it is to be applied; if it be interpreted without any regard for the history of the subject to which it relates, it must be admitted that it may be construed as the *Commission* construed it. As has been often said, the statute is a remedial one designed to regulate the relations of carrier and shipper so as to prevent discrimination as between shippers and localities. The *Commission* seems to have given great weight to the use of the term "rental" in sub. (2) of sec. 195.39, and to have held that that implied something in the nature of a sum paid for the use of real estate,—at least it is so argued here. Such a limitation upon the meaning of the word would certainly lead to a strict, and it seems to us an unreasonable, construction of the statute. The words used in the Interstate Commerce Act are, "the charges and allowances . . . for the service so rendered and for the use of the instrumentality so furnished." Sub. (2) speaks of a "facility" instead of "service and instrumentality," and describes the sum paid as "rental" instead of "charges and allowances." "Facility" is not as narrow a term as "instrumentality," at least it is not ordinarily so used. If a contractor should say that he did not have the facilities for carrying on an operation, he might be understood to say that he could not procure labor (service) or did not have the necessary capital or was without the required equipment. "Equipment" and "instrumentality" are more nearly synonymous although often used in widely different senses.

Referring to the language of sub. (2) of sec. 195.39, it

is to be noted that the language of the prohibition is that any railroad shall not collect less from any shipper by reason of such shipper "furnishing any part of the facilities incident thereto," while the language of the proviso is that the railroad may pay a reasonable rental for "facilities furnished" by any other person, including a shipper.   The language of the proviso is as broad as the language of the prohibition.   The statute is just as inclusive as if it had used the words "pay for the reasonable use" instead of the word "rental."   The word "facility" is a very inclusive term and was no doubt intended to embrace anything which aided or made easier the performance of the duty which the carrier was required to perform.   The statute was clearly intended to prevent unjust discrimination which had theretofore been accomplished by means of improper allowances for switching, dividing the rate by reason of what were in fact plant facilities under the cover of furnishing railway track, and other devices of like nature.   All such separate arrangements were prohibited, and thereafter if allowance was to be made it was to be made by contract subject to the approval of the *Commission* as to reasonableness.   It clearly was not intended to prevent all arrangements between shipper and carrier.   One rate was prescribed; if a "facility" was furnished by the shipper the carrier was to pay therefor a certain sum which was called a rental. Money paid for the use of a facility in aid of transportation under a contract subject to the supervision of the *Commission* did not by the terms of the statute constitute a discrimination.   Nor does it appear from the evidence in this case that such arrangements must be entirely prohibited in order to prevent unlawful discrimination.   We see no reason in law or morals why if the shipper perform at a reasonable cost, by means of a facility which it owns and controls, a service which the carrier is required to perform,

such an arrangement is not economically sound and legally justifiable. While there is considerable assertion and argument to the contrary, such evidence as there is in the record discloses no sound basis of apprehension that the proposed arrangement will lead to discrimination and other abuses. No instance is pointed out either in state or interstate commerce where the arrangement contemplated by the tariffs tendered is operating to the disadvantage of any other shipper. As a matter of fact, it is not unreasonable to suppose that where a switching crew of the carrier enters the shipper's yards it often performs, without charge therefor, intra-yard service as an incident to the service which it is required to perform. So that the discrimination may as well be one way as the other. If the plaintiffs are required without compensation to take the cars from the receiving tracks and make the placements thereof which the carrier would otherwise be required to make because of the peculiar nature of the business, then the carrier gains an advantage which it is not entitled to receive. Any arrangement entered into between a shipper and carrier of the sort here under consideration must be subject to investigation and regulation by the *Commission* under the statute. Both the carrier and the shipper concede as much when they petition for leave to file the tariff. If the tariff is not a proper subject for the scrutiny of the *Commission,* it could not be, as it very properly is, designated a tariff.

We see no difficulty in holding that the switch engine with its crew and the equipment constitutes a facility within the meaning of the statute. It might also properly be said that the shipper performs a service and furnishes an instrumentality. Both forms of expression are very broad and inclusive and are to be understood and applied in the light of the subject matter to which they relate. The amount paid has the same legal nature whether it be called a

"charge" or a "rental." We readily reach the conclusion that the tariff as proposed prescribed the rental to be paid for a facility and should have been filed.

We are further impelled to the conclusion which we reach in this case because it is the policy of this court to construe the law of this state so that it will conform as nearly as possible to the federal law and federal practice when applied to the same subject matter.

It is quite apparent that sub. (2) is an attempt to provide in a very concise and inclusive form for the very matters provided by the section of the Interstate Commerce Act hereinbefore referred to. There may be cases within the Interstate Commerce Act not within sub. (2), but we have no doubt that in the instant case as applied to the facts disclosed by the evidence they are substantially identical in meaning.

Upon the meaning of the word "facility" the following references may be helpful: 25 Corp. Jur. p. 334, and cases cited; *State v. Cave,* 20 Mont. 468, 475, 52 Pac. 200; *In re Badger Tel. Co* 3 Wis. R. R. Comm. Rep. 98, at p. 104; *Janesville v. Janesville W. Co.* 7 Wis. R. R. Comm. Rep. 628, at p. 637; *Electric Theater v. Lodi E. L. Plant,* 7 Wis. R. R. Comm. Rep. 745.

Upon the general proposition that such an arrangement is proper and reasonable, see *U. S. v. B. & O. R. Co.* 231 U. S. 274, 34 Sup. Ct. 75.

Cases are cited to us such as *General Electric Co. v. New York Cent. & H. R. R. Co.* 219 N. Y. 227, 114 N. E. 115, where it appears that the arrangement had been found to be not within the terms of the act by the interstate commerce commission and the facility for which compensation was claimed in that case was held to be a plant facility and not one in aid of transportation. The facts being so fundamentally different from the facts disclosed by the evidence in this case, while the case may be interesting and helpful it is not controlling.

Fuller v. Town Board, 193 Wis. 549.

May we suggest that in cases of this character, paraphrasing the old proverb, "An ounce of fact is worth a pound of argument and assertion."

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on October 11, 1927.