NEKOOSA-EDWARDS PAPER COMPANY and others, Appellants, vs. PUBLIC SERVICE COMMISSION and others, Respondents.

*December 9, 1932—March 7, 1933.*

646

For the appellants there were briefs by *Goggins, Brazeau & Graves* of Wisconsin Rapids and *Philip H. Porter* of Madison, and oral argument by *Mr. Porter* and *Mr. Theo. W. Brazeau.*

For the respondent Public Service Commission there was a brief by the *Attorney General, Samuel Bryan,* assistant attorney general, and *Daniel H. Grady* of Madison, special counsel, and oral argument by *Mr. Grady* and *Mr. Bryan.*

The following opinion was filed January 10, 1933:

ROSENBERRY, C. J. Upon the pleadings the only question which the plaintiffs did or could raise was whether or not the order of the Public Service Commission in receiving, filing, and approving the supplemental tariff was a valid order. Sec. 195.08, Stats., requires every railroad to print in plain type and file with the commission its schedules and to publish with and as a part of such schedules all rules and regulations that in any manner affect the rates charged for the transportation of passengers or property.

Sec. 195.11, Stats. 1931 (former number 195.39), provides that it shall be unlawful for any railroad to demand, charge, collect, or receive from any shipper a less compensation for the transportation of property or for any service rendered or to be rendered by said railroad in consideration of said shipper furnishing any part of the facilities incident thereto, but any railroad may rent any facilities incident to transportation and pay a reasonable rental therefor. It was held that under this section as it stood at the time the contracts were entered into between the plaintiffs and the carriers, the service performed by the shippers under their

contracts with the carriers came within the provisions of this section.

By the canceling tariffs filed on the 29th day of May, 1931, the carriers withdrew the schedule making provision for the payment of this service or rental charge. It is now claimed that the action of the Railroad Commission in receiving, filing, and approving this canceling tariff is invalid—(1st) because the plaintiffs' contracts with the defendant carriers are still in full force; (2d) that the canceling tariff supplement is unlawful; and (3d) that the commission deprives plaintiffs of their right to collect the allowances agreed upon between the plaintiffs and the carriers.

The contracts between the plaintiffs and the carriers are not subject to filing with the commission. The only thing that is required to be filed with the commission is a tariff setting forth the contract rate, and this in order that the commission may have notice that the shipper is rendering a part of the service which it would otherwise be forbidden to render. It is probably true that the amount to be charged by the shipper and paid by the carrier for terminal switching service cannot lawfully be paid by the carrier unless it files a so-called tariff disclosing the amount charged. What the carrier has in fact done is to cancel the arrangement which it had with the plaintiff shippers, and it now undertakes to render all of the service called for by its through bill of lading, including setting in, spotting, and taking out cars from the plant of the plaintiffs. It would seem that the duty of the Railroad Commission to receive, file, and approve the canceling tariff is plain. The arrangement made between the plaintiffs and the carriers was one which the Public Service Commission could not compel the carriers to enter into. It was a voluntary arrangement, one contrary to the law except for the rental provision of sec. 195.39, now 195.11.

The real basis of the plaintiffs' complaint is that by filing the supplemental tariffs the carriers have disabled themselves

from carrying out the contracts entered into with the plaintiffs. Any special contracts made by the carriers with the plaintiffs by which plaintiffs agree to perform services for the carriers are matters over which the Public Service Commission has no jurisdiction whatever. If the plaintiffs have a valid contract with the carriers, and by reason of the carriers filing the canceling tariff they have rendered the contract impossible of performance, the plaintiffs' remedy, if any, is by a suit upon the contract. The obligation of the contract of the plaintiffs is not impaired, the contract is breached if plaintiffs' contentions are sound.

It appears that in 1931 sec. 195.11 was amended by ch. 60 of the Laws of 1931, which added the following at the end of sub. (2):

"But no payment shall be made by a carrier to an industry for performing any part of the service incident to the origination or determination of carload line haul shipments which the carriers have assumed to perform under the provisions of the bill of lading."

In the supplemental tariffs filed no reference was made by the carriers to the provisions of ch. 60 of the Laws of 1931. In their answer in this action the carriers allege that they take no position with reference to the constitutionality or unconstitutionality of ch. 60. By far the greater part of the argument made here in the briefs and upon oral argument relates to the constitutionality of ch. 60. It is considered that the constitutionality or unconstitutionality of that chapter is in no way involved in this action. If we should examine the constitutionality of that statute, our judgment in this case would be the same whether we found it constitutional or unconstitutional. It would seem to require no argument to show that an otherwise valid tariff is not illegal because of the provision of a contract over which the commission has no jurisdiction and into which the carriers and the plaintiffs may enter at their pleasure. The filing of the tariff in the first instance and the cancellation of the tariff sub-

sequently by the carriers are matters resting wholly within the discretion of the carriers. The only limitation upon their power in that respect is that the compensation agreed upon and stated in the tariff must fairly represent the cost of the service or rental charge in order that the carriers may not discriminate as between shippers. Whether the carrier filed the canceling tariff pursuant to the mandate of ch. 60 or for other reasons is immaterial. If ch. 60 is unconstitutional, it will afford the carriers no defense for breach of their contracts. The amount paid by the carriers pursuant to their contracts is a rental charge. It is not a rate, fare, or charge over which the commission has jurisdiction under sec. 195.11 except as it may affect the through rate which is within its jurisdiction. If the Public Service Commission had ordered the tariff canceled either on its own motion or upon petition because in conflict with ch. 60, an entirely different question would have been presented. Approval of the canceling tariff voluntarily filed by the carriers is a very different thing.

We are not called upon to determine, and cannot determine because it is not within the issues, whether ch. 60 is constitutional or unconstitutional. The reception, filing, and approval of the canceling tariff merely left the through rate on carload line haul shipments in full force. The legality of that order cannot be doubted.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on March 7, 1933.