NEKOOSA-EDWARDS PAPER COMPANY, Respondent, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY and another, Appellants, and five other cases.

*February 5—March 5, 1935.*

428

For the appellant the State there was a brief by the *Attorney General, Joseph G. Hirschberg,* deputy attorney general, attorneys, and *Samuel Bryan* of Madison of counsel, and oral argument by *Mr. Bryan* and *Miss Mary Eschweiler* of Madison.

For the respondent there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

FAIRCHILD, J. A railroad and a shipper may lawfully enter into a contract under which the railroad is to pay rent for any facilities incident to transportation of property owned by the shipper and used by the railroad. The section of the statutes applicable is sec. 195.11 (2) and it reads:

"It shall be unlawful for any railroad to demand, charge, collect or receive from any shipper a less compensation for the transportation of property or for any service rendered or to be rendered by said railroad, in consideration of said shipper furnishing any part of the facilities incident thereto; but any railroad may rent any facilities incident to transportation and pay a reasonable rental therefor, *but no payment shall be made by any carrier to an industry for per-*

*forming any part of the service incident to the origination or determination of carload line haul shipments which the carriers have assumed to perform under the provisions of the bill of lading."*

The railroads and respondents have entered into contracts which fix their rights and obligations with respect to the movement of cars by the shippers. The railroads are to pay the rental charges sued for unless the italicized portion of the quoted statute has made the contracts invalid. That portion of the section was added to the statute in 1931. The railroads, after the amendment, refused to pay the amounts due under the contracts because of doubt on their part of the lawfulness thereof. Each contract is still in force, however, unless its validity is destroyed by the amendment. Respondents claim under the contracts, have continued to perform switching as provided therein, and demand the compensation provided for in the agreements. This creates a situation in which the effect of the amendment must first be considered, and because the conclusion reached controls this case, other questions are not treated. A similar contract between the same parties was before this court in *Nekoosa-Edwards Paper Co. v. Railroad Comm.* 193 Wis. 538, 213 N. W. 633. The word "facility," as used in the statute, was carefully considered and defined in that case. The court compared the language used in the Interstate Commerce Act with that of the section here under consideration in interpreting this particular section, and said, on page 545:

"The words used in the Interstate Commerce Act are, 'the charges and allowances . . . for the service so rendered and for the use of the instrumentality so furnished.' Sub. (2) speaks of a 'facility' instead of 'service and instrumentality,' and describes the sum paid as 'rental' instead of 'charges and allowances.' 'Facility' is not as narrow a term as 'instrumentality,' at least it is not ordinarily so used. If a contractor should say that he did not have the facilities for carrying on an operation, he might be understood to say that he could not procure labor (service) or did not have the

necessary capital or was without the required equipment. 'Equipment' and 'instrumentality' are more nearly synonymous although often used in widely different senses.

"Referring to the language of sub. (2) of sec. 195.39 [now 195.11 (2)], it is to be noted that the language of the prohibition is that any railroad shall not collect less from any shipper by reason of such shipper 'furnishing any part of the facilities incident thereto,' while the language of the proviso is that the railroad may pay a reasonable rental for 'facilities furnished' by any other person, including a shipper. The language of the proviso is as broad as the language of the prohibition. The statute is just as inclusive as if it had used the words 'pay for the reasonable use' instead of the word 'rental.' The word 'facility' is a very inclusive term and was no doubt intended to embrace anything which aided or made easier the performance of the duty which the carrier was required to perform. The statute was clearly intended to prevent unjust discrimination which had theretofore been accomplished by means of improper allowances for switching, dividing the rate by reason of what were in fact plant facilities under the cover of furnishing railway track, and other devices of like nature. All such separate arrangements were prohibited, and thereafter if allowance was to be made it was to be made by contract subject to the approval of the *Commission* as to reasonableness. It clearly was not intended to prevent all arrangements between shipper and carrier."

It was also held in that case that the switch-engine with its crew "constitutes a facility within the meaning of the statute."

The confusion, if any exists, which is responsible for the doubt on the part of the railroads arises from the amendment which added to the section the prohibition against the railroads paying an industry for performing any part of the service incident to the origination or determination of carload line haul shipments which the railroads have assumed to perform under the provisions of the bill of lading. It is conceded that it is the duty of the railroad to take the property to be transported from designated points and that the

charge for this service is fixed by tariffs. The switching contracts do not modify such tariffs.

The words "any facilities incident to transportation," defined in *Nekoosa-Edwards Paper Co. v. Railroad Comm.*, *supra*, remained in the statute when it was amended after the decision of that case. The meaning of those words, as used in sec. 195.11 (2), Stats., had been thus so definitely fixed that under controlling rules of construction the amendment forbidding payment for rendering of "service incident to the origination or determination of carload line haul shipments . . ." necessarily referred to and prohibited some service not included in "facilities incident to transportation." A railroad is permitted to pay a rental for facilities owned by the shipper including the service of the switching crew. The word "facilities," as used in sec. 195.11 (2), before the amendment, had a plain and unambiguous meaning. It included a switch-engine and the service of a crew. This meaning still attaches, for, where a statute uses a word or phrase having a definite meaning, it will be presumed to be used in that sense and will be so construed unless it clearly appears that it was not so intended. *Nolan v. Milwaukee, Lake Shore & Western R. Co.* 91 Wis. 16, 64 N. W. 319.

The law as amended does not change the right of rental of tangible things owned by the shipper and incident to transportation, things which may be readily measured, but does forbid the paying for services elusive in nature and capable of assisting in evasions or resulting in discrimination between shippers. In *Nekoosa-Edwards P. Co. v. Public Service Comm.* 210 Wis. 644, 246 N. W. 428, certain phases of this transaction were again presented to this court, and at page 650 it was said:

"The amount paid by the carriers pursuant to their contracts is a rental charge. It is not a rate, fare, or charge over which the commission has jurisdiction under sec. 195.11 except as it may affect the through rate which is within its jurisdiction."

The propriety and effectiveness of the arrangement between the railroads and the respondents, as worked out in the contracts, cannot be questioned when the proper meaning is given to the word "facility" as used in the statute, construed as it was in *Nekoosa-Edwards Paper Co. v. Railroad Comm., supra.* We agree with the circuit court in its conclusion that ch. 60, Laws of 1931, neither expressly nor impliedly repealed the provisions under which the contracts here in question were declared lawful.

*By the Court.*—Judgments affirmed.