FINANCE COMMITTEE OF FALMOUTH *vs.* FALMOUTH BOARD OF PUBLIC WELFARE.

Barnstable.   February 6, 1963. — March 8, 1963.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Public Welfare.   Public Record.   Equity Pleading and Practice,* Declaratory proceeding, Parties, Bill.

A ruling by the State department of public welfare that the finance committee of a town could not "delegate its authority" under G. L. c. 66, § 17A, as amended through St. 1956, c. 356, to inspect the records of the town's board of public welfare pertaining to public assistance was invalid.   [584]

The finance committee of a town, authorized by the town to make a general survey of its department of public welfare, was entitled under G. L. c. 66, § 17A, as amended through St. 1956, c. 356, to have the town's board of public welfare submit all its records, including "case records" pertaining to welfare recipients, for examination by a consultant who had been employed by the finance committee to make the survey and to submit recommendations to it respecting public assistance and who had had "prior experience in . . . welfare administration" and agreed to comply with all laws "applicable to the work to be done." [580, 582–587]

The State department of public welfare and a town were not necessary parties to a suit in equity by the finance committee of the town against the town's board of public welfare for declaratory relief respecting the duty of that board to submit all its records relating to public assistance for examination by a consultant employed by the finance committee. [587]

Nothing in G. L. c. 121, § 4A, as amended through St. 1945, c. 240, § 2, provides for an appeal to the State department of public welfare from a refusal by a town's board of public welfare to permit inspection of the board's records relating to public assistance.   [587]

A certain bill in equity by the finance committee of a town for declaratory relief as to the duty of the town's board of public welfare to submit all its records relating to public assistance to a consultant employed by the finance committee was not demurrable as multifarious.   [587]

BILL IN EQUITY filed in the Superior Court on November 2, 1959.

The suit was heard on demurrer and on the merits by *Thompson, J.*

*William H. Carey* for the plaintiff.

*John P. Sylvia, Jr.* (*Robert Clayton & James C. Doyle* with him) for the defendant.

CUTTER, J.   The finance committee[1] of Falmouth seeks declaratory relief and asks that the Falmouth board of public welfare (the board) be compelled to submit all its records, including "case history" files, for examination by a consultant appointed by the finance committee.   After trial on the merits, a demurrer was sustained by interlocutory decree.   By final decree the bill was dismissed.   The finance committee appealed from each decree.   The facts are stated upon the basis of the report of material facts.   The evidence is reported.

At the 1959 town meeting, $7,000 was appropriated "for use by the finance committee for their 1959 budget, of which . . . $5,000 . . . was . . . for . . . paying the expenses . . . [of] a general survey of the [town] welfare department . . . by some outside organization.   The finance committee thought that the welfare budget was too high and . . . that the committee itself was not qualified to make . . . [the] survey . . . ."   On June 29, 1959, the committee made a contract with a corporation under which one Shurtleff "was to have charge of the survey."   He had "an extensive prior experience in . . . town matters and . . . in welfare administration."

On July 1, the finance committee requested the board to make available to the consultants "department records . . . as well as department personnel for . . . interviews."   The board was also asked to authorize the consultants "to interview welfare recipients and other parties."   The board replied on July 2, 1959, that it must follow G. L. c. 66,

---

[1] See G. L. c. 39, § 16 (as amended through St. 1950, c. 56); Johnson, Trustman, and Wadsworth, Town Meeting Time, § 10; Hardy, Municipal Law, § 166. A town by-law (Falmouth By-Laws, c. 9, § 2, as amended, Oct. 1956), provides in part that the "committee may consider such questions with reference to the conduct of the town affairs as they may deem advisable, and may consult with any and all officers, boards, and committees of the town with reference to matters under their supervision; they shall consider . . . various articles . . . [for town meetings] and shall make a report of . . . recommendations to the town."

345 Mass. 579    581

Finance Committee of Falmouth *v.* Falmouth Board of Public Welfare.

§ 17A (as amended through St. 1956, c. 356),[2] and asked "the scope of . . . [the] proposed investigation and what information will be requested . . . so that we may . . . [ask] for the O.K. of the [State] department of public welfare." The letter also asked for "the qualifications and experience of the group under contract to do the investigation." On October 5, the finance committee renewed its request, to which the board replied that . . . Shurtleff could interview department personnel, and that it would "make any records available . . . that do not include the names of recipients, or case records." This letter stated that the "department has ruled that the finance committee may not delegate its authority,"[3] and renewed a request for Shurtleff's qualifications.

---

[2] Section 17A, as thus amended, reads in part, "The records of the department of public welfare and of the several . . . town welfare departments and bureaus of old age assistance relative to all public assistance . . . shall be public records; provided, that they shall be open to inspection only by public officials of the commonwealth, which term shall include members of the general court, representatives of the federal government *and officers, boards or committees of . . . towns responsible for the preparation of annual budgets for such public assistance, the making of recommendations relative to such budgets, or the approval or authorization of payments for such assistance,* for purposes directly connected with the administration of such public assistance . . . and provided, further, that information relative to the record of an applicant for public assistance or a recipient thereof may be disclosed to him or his duly authorized agent . . ." (emphasis supplied). The section then provides that the State Commissioner of Public Welfare in his discretion shall have power to disclose such welfare information to any incorporated Jewish philanthropy, incorporated Catholic charity, or other incorporated social agency, or social service index. The italicized language was inserted by St. 1953, c. 342. See 1953 House Bills Nos. 465, 1234, 2095. Previously, no such language had been included in § 17A. *Hurley* v. *Board of Pub. Welfare of Lynn,* 310 Mass. 285, 288, was decided before the 1953 amendment.

[3] General Laws c. 121, § 4A (as amended through St. 1945, c. 240, § 2), reads, "The department [of public welfare] shall have power to establish and enforce *reasonable* rules and regulations governing the custody, *use* and preservation of the records . . . [and] files . . . of . . . town welfare departments and bureaus . . . relating to all public assistance. No other . . . agency of the commonwealth or of any political subdivision thereof, which, under any provision of law, is furnished with the names of recipients of public assistance, shall permit the publication of lists of such names or make use thereof for purposes *not directly connected with the administration of such assistance*" (emphasis supplied). General Laws c. 271, § 43 (as amended through St. 1945, c. 240, § 3), subjects to a fine not exceeding $100 any "person who, except *for purposes directly* connected with *the administration of general public assistance* [or] *old age assistance* . . . and in accordance with the rules and regulations of the department of public welfare made under" c. 121, § 4A, "shall . . . disclose . . . [or] make use of . . . names of, or any information concerning, persons . . . receiving general public assistance [or] old age assistance . . . directly or indirectly derived from the records . . . [or] files . . . of . . . any . . . town welfare department or bureau . . ." (emphasis supplied).

On October 13, Shurtleff and a member of the finance committee went to the board's office and requested the board's chairman "to allow . . . Shurtleff to examine the public welfare records" including case records "pertaining to old age assistance, aid to dependent children, disability assistance, and . . . records pertaining to general relief."[4] Each year the board "establishes its budget and an analysis of . . . [these] case record[s] is necessary towards the establishment of such a budget. . . . Shurtleff . . . [would have been permitted to] interview the . . . [whole staff], go through all the administrative records . . . [and] any records he wanted to except those containing the names of the welfare recipients, bank reports, relative reports, and the amount of money being paid to the recipients. . . . [The chairman of the board] was willing to set up 'dummy case records' — in all categories — going through the complete procedure, but using fictitious names and circumstances, but this was not agreeable to . . . Shurtleff. The finance committee . . . has not been able to conduct the survey . . . through . . . [Shurtleff] by reason of having been denied access to the case records and names of . . . welfare recipients." Shurtleff testified "that since the . . . case record . . . contains the entire case history, records of frequency of visitations, procedures employed with reference to original applications, the thoroughness of the receiving clerk, and the investigating clerk, the matter of placing liens w[h]ere legally required against properties, and so forth, . . . it was necessary to look at that record to make any type of an appraisal of the . . . efficiency of the" board. Records of general welfare payments, which are not assisted by State or Federal contributions, were separately requested. These also were refused.

1. The principal question is whether c. 66, § 17A (fn. 2, *supra*), precludes the finance committee's consultant from

---

[4] A case record "contains the entire case history, the names of the recipient, his application with the names of his family and relatives, their circumstances and reports; bank reports, medical reports, reports from unemployment compensation and social security sources; records of the frequency of visits to the recipients, matters of placing liens against property, etc."

examining case records in the custody of the board. The board contends that under § 17A it may not give access to these records to paid independent investigators, hired by the finance committee.

The enactment of § 17A[5] was caused by the 1939 amendments of the Social Security Act (now found in 42 U. S. C. §§ 302, 602, 1202 [1958][6]), which provided that State plans for old age assistance, aid to dependent children, and aid to the blind must contain safeguards which restrict the use or disclosure of information concerning aid applicants and recipients to purposes directly connected with the administration of such aid. See also 42 U. S. C. § 1352 (1958), added in 1950 by Pub. Law, No. 734 (81st Cong., 2d Sess.), § 351, 64 Stat. 477, 555, relating to aid to the permanently and totally disabled. The 1939 amendments must be read in the light of the so called Jenner amendment (Rev. Act of 1951, § 618, 65 Stat. 569), apparently not incorporated in the U. S. Code, but mentioned in annotations in the official copy of 42 U. S. C. §§ 302, 602, 1202, 1352 (1958).[7]  Section

[5] The statutes quoted in fns. 2 and 3, *supra* (although somewhat amended after 1941), were first enacted by St. 1941, c. 630, declared an emergency law on August 21, 1941, by the Governor because "otherwise this law would not take effect until ninety days from its passage and . . . there are substantial contributions by the Federal Government that are being withheld until this Act becomes law in Massachusetts." See 1941 House Bills Nos. 1259, 2613; 1941 Senate Journal 1116, 1213, 1491–1492, 1496; 1941 House Journal 1489, 1936, 1999–2000, 2020.

[6] These 1939 amendments appeared in Pub. Law No. 379 (76th Cong., 1st Sess.), 53 Stat. 1360, 1361, 1380, 1397. These did not become effective until July 1, 1941. See recommendations of the Social Security Board, Hearings Relative to the Social Security Act Amendments of 1939 (House Comm. on Ways & Means, 76th Cong., 1st Sess.) pp. 3, 16. See also pp. 2407–2412, where, at p. 2408, the chairman of the Social Security Board (Dr. Altmeyer) said, ". . . [T]here is no thought of restricting the official use of all this information; and by 'official' I mean not only . . . use by . . . States, but by . . . local officials . . . . It is merely to protect these records against . . . indiscriminate use, for purposes not at all related to the administration of the law . . . or of companion laws . . . ."

[7] The amendment (no. 262) is discussed in the conference report on the Revenue Act of 1951. U. S. Code Cong. & Adm. Service, 82d Cong., 1st Sess. (1951), pp. 2121, 2169. Discussion of the amendment by its proponent is found in 97 Cong. Rec. pp. 8,432–8,434. See also 97 Cong. Rec. pp. 12,197–12,205, 12,371, 12,691, 13,275, 13,279–13,280, 13,621, 13,624, 13,632. The amendment was controversial (see Cronin, Impact of Federal Welfare Grants on Municipal Government, 40 B. U. L. Rev. 531, 535–536), but its legislative history indicates that it was intended to have a broad scope. As is suggested in Mr. Cronin's article, Massachusetts appears to impose even more careful restrictions on public access to case records than the Jenner amendment would require.

618 reads, "No State . . . or political subdivision thereof shall be deprived of any grant-in-aid or other payment to which it otherwise is . . . entitled pursuant to title I, IV, X, or XIV of the Social Security Act, as amended, by reason of the enactment or enforcement by such State of any legislation prescribing any conditions under which public access may be had to records of the disbursement of any such funds . . . within such State, if such legislation prohibits the use of any list or names obtained through such access to such records for commercial or political purposes."

Section 17A permits boards like the finance committee to have access to "such records" only "for purposes directly connected with the administration of such public assistance." Consequently, § 17A prohibits (particularly when read with c. 121, § 4A, and c. 271, § 43) any use of such records "for commercial or political purposes." We have been referred to no Federal regulation (cf. 45 C. F. R., part 201, pp. 125–128) which purports to prohibit access to such records in the manner now sought by the finance committee for purely public purposes. In view of the Jenner amendment, there is grave doubt whether such a regulation would be valid. Similarly, in view of the express grant, by the 1953 amendment of § 17A (see fn. 2, *supra*), of access to such records for town "committees . . . responsible for the preparation of [or recommendations relative to] annual budgets for such public assistance," there would be serious question whether a regulation by the department of public welfare under c. 121, § 4A, would be "reasonable" if it prohibited such a committee or its proper agents to have access to such records for public purposes. No such regulation, if there is any, appears in the record. There is, to be sure, reference in correspondence to a ruling of the department "that the finance committee may not delegate its authority." Such a ruling, of course, is invalid in view of our interpretation of § 17A.

When the 1953 amendment of § 17A was enacted, the Jenner amendment was already in effect. No Federal legislation then prohibited the State from giving town finance

committees access to the case records.  The Legislature must be taken to have been familiar with the circumstance that members of town finance committees perform a difficult public service, usually if not invariably without compensation.  In the absence of explicit language, it would be unreasonable to construe a statutory authorization to such committees, to examine voluminous and complicated public records, as requiring the committee members to do this routine work in person and as prohibiting the use of paid experts, consultants, accountants, and clerical assistants for what is likely to be seasonal or occasional research.  Particularly would such a construction be peculiar in view of the express grant of authority in § 17A to any "representatives of the federal government" (which term would include clerical employees, ordinary investigators, and auditing agents) to have access to these records.

A statutory right of access to records usually includes reasonable opportunity for the assistance of experts and other persons as well as the opportunity to make copies.  See *Varney* v. *Baker,* 194 Mass. 239, 241–242; *Powelson* v. *Tennessee E. Elec. Co.* 220 Mass. 380, 384–385; *Shea* v. *Parker,* 234 Mass. 592, 594–595; *Direct-Mail Serv. Inc.* v. *Registrar of Motor Vehicles,* 296 Mass. 353, 356–358.  Cf. *Gavin* v. *Purdy,* 335 Mass. 236, 238–239.  In seeking outside assistance, nothing unreasonable is proposed by the finance committee.  The judge found that Shurtleff had "prior experience in . . . welfare administration."  No evidence suggests that he was not well qualified to conduct the survey.  No discretionary power and no authority to make decisions was to be delegated to Shurtleff.  See *West Springfield* v. *Mayo,* 265 Mass. 41, 43–44.  See also *Concord* v. *Attorney Gen.* 336 Mass. 17, 21; McQuillin, Municipal Corporations (3d ed.) §§ 10.41, 12.126, 12.127.  Cf. *Sheils* v. *Commonwealth,* 306 Mass. 535, 540–541.  He was only to make a survey and to submit recommendations to the finance committee as an aid to their action.  This type of nonrecurrent investigation is frequently carried on by consultants or independent investigators, and it was work on which (at least where authorized by the town to do so at town ex-

pense) the finance committee reasonably might obtain assistance, without violation of § 17A, so long as the committee did not abdicate its own power of judgment and recommendation.

The agreement between the finance committee and the consultant corporation, for which Shurtleff acted, required the corporation to "comply with all Federal, State, and town laws and bylaws applicable to the work to be done under this contract." This seems to us a reasonable and sufficient effort by the committee to ensure that Shurtleff and others acting for the corporation would preserve the confidential character of the case records. See Restatement 2d: Agency, § 396. We assume, also, that G. L. c. 271, § 43 (fn. 3, supra), would apply to an unauthorized disclosure by a consultant of the finance committee.

Proper investigation of welfare, old age assistance, and other public aid expenditures in connection with making recommendations for annual budgets is "directly connected with the administration of such public assistance." Such public assistance is paid from tax money raised from citizens and property owners. Their duly designated representatives are exercising a public function in connection with such public assistance when they examine expenditures for such assistance to make certain that the expenditures are neither excessive nor inadequate and are being made fairly, wisely, and economically, without waste or fraud.

The legislative history of § 17A and of the other statutory sections first enacted by St. 1941, c. 630 (see fns. 2, 3, 5, supra), leads us to construe those provisions as not intended by the Legislature to permit any disclosure of records that would violate Federal statutes or valid Federal regulations, or reasonably cause improper risk of forfeiture of Federal grants to the State and its subdivisions in aid of public assistance. Compare the analogous situation discussed in Commissioner of Labor & Indus. v. Boston Housing Authy., ante, 406, 415–416. Cf. also Boston v. McCafferty, 328 Mass. 177, 179–180; Fenton v. Department of Pub. Welfare, 344 Mass. 343, 345–347. We perceive, however, no indication of any risk of loss of Federal funds because of

the limited disclosure for public purposes which the finance committee now seeks to enforce. The finance committee was entitled to that disclosure.

2. There was no necessity of joining the department of public welfare or the town itself as a party. No action by the department was sought. If it has an interest, not apparent from the record, it should have asked leave to intervene. No question is raised of the validity of the town by-law prescribing the powers of the finance committee. See G. L. c. 231A, § 8. Cf. *Morgan* v. *Banas,* 331 Mass. 694, 698. Cf. also *Ward* v. *Comptroller of the Commonwealth, ante,* 183, 186.

3. There is no merit to the board's contention that the finance committee has not exhausted its administrative remedies. We have interpreted § 17A as expressly giving the finance committee and its authorized consultants the right of access, in the circumstances, to all the board's records. Chapter 121, § 4A, provides no administrative procedure, which must be exhausted, for any appeal to the department of public welfare from the board's refusal to give access to the records.

4. The bill is not multifarious. All questions argued are closely related to the board's refusal to give to the finance committee access to all the board's records in accordance with the vote (and appropriation) of the town. See *Wilson* v. *Jennings,* 344 Mass. 608, 621. See also *Caton* v. *Reuther,* 341 Mass. 547, 549. Cf. *Defiance Printed Circuit Corp.* v. *Goodwin,* 337 Mass. 473, 476.

5. The finance committee in its brief does not argue the contention referred to in the prayers of its bill, that it is entitled to retain and pay counsel from town funds. We need not consider this issue. See Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698, amended November 5, 1962.

6. The interlocutory decree and the final decree are reversed. The case is remanded to the Superior Court for further proceedings and a declaration of rights consistent with this opinion.

*So ordered.*