## CIRCUIT COURT OF ARLINGTON COUNTY

Virginia Meckenberg

v.

Lenna K. Becker

### November 1974

### Case No. (Law) 17024

By JUDGE CHARLES H. DUFF

Plaintiff seeks judgment in the quantum of Fifty Thousand Dollars from Defendants arising from alleged injuries in an automobile collision. She alleges injury, *inter alia*, to her head and nervous system and claims to have suffered mental anguish and emotional depression and to have expended sums for medical treatment and loss of time from employment. The Defendants, pursuant to Rule 4:9 secured the issuance of a subpoena directed to the Arlington County Department of Human Resources requiring production of "any and all records, reports, medical reports and other information relative to Virginia G. Meckenberg." The Department of Human Resources, pursuant to Rule 4:9(c), filed a Motion to Quash the subpoena as violative of Section 63.1-53, Code of Virginia. The Plaintiff offers no objection to the production of the documents. Defendants and the Department of Human Resources have filed points and authorities and argument has been heard on the issue involved.

Section 63.1-53 provides in essence that all records of the local Boards pertaining to assistance and services provided any individual shall be confidential and shall not be disclosed except to persons having a legitimate interest, persons specifically mentioned in the statute and in 63.1-209. The latter section, dealing specifically with child welfare agencies, similarly provides that

such records shall be confidential but further provides that the Commissioner and the State Boards shall have access to the records and that "it shall be disclosed upon the proper order of any court."

Many states have enacted similar legislation apparently pursuant to the requirements of 42 U.S.C. Section 602, which provides that in order for a state to receive Federal funds it must enact a plan to provide safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with the welfare program. An examination of 45 C.F.R. Section 205.50(b) reveals an exception to the type of information to be safeguarded by allowing the State legislature to prescribe any conditions under which public access may be had to the records of the disbursement of funds or payments, provided such legislation prohibits the use of any lists or names obtained through such access to such records for commercial or political purposes. It seems apparent that the Federal statutes and regulations were primarily concerned with disclosure which might result in a commercial or political use.

The objective of the confidentiality requirements has been variously described as "the protection of applicants and recipients from exploitation and embarrassment," *In Re Cager*, 251 Md. 473, 248 A.2d 384 (1968); "to save recipients from any embarrassment," *In Re Will of Mellion*, 295 N.Y.S.2d 822 (1968); and to prohibit "any use of such records for commercial or political purposes," *Finance Committee of Falmouth* v. *Board of Welfare*, 345 Mass. 579, 188 N.E.2d 848 (1963).

It seems to me that the basic and narrow issue presented is whether a person, the present plaintiff, whom the statutes in question intend to protect against certain unwarranted disclosures, may waive the benefit thereof when she deems it to her advantage to do so in a litigated case in which she is a party. No Virginia decision interpreting the privilege asserted by the Department has been cited or found, but similar statutes and their interpretation have been before the courts of other jurisdictions. In *Powers* v. *Superior Court*, 82 A.2d 885 (R.I. 1951), the issue was whether in defense of his wife's divorce suit the petitioner could secure the records pertaining to unemployment and cash sickness benefits payable to his wife. The Rhode Island statutes, while not identical to ours, were similar in purport. In sustain-

ing a subpoena duces tecum for the records the Court quoted with approval from *Haugland v. Smythe*, 169 P.2d 706, 710 (Wash. 1946), as follows:

> We have no doubt that the records of the County Welfare Department would be exempt from disclosure to those who are motivated simply by curiosity and in situations such as are here involved we may assume that the same exemption could be successfully invoked where the information was sought for purely commercial, personal or political purposes or as a basis for creditors' suits or similar proceedings. None of these features, however, are present in this case.

In *Price v. Pearson*, 447 P.2d 501 (Wyo. 1968), the Wyoming Court held that notwithstanding statutory restrictions on the disclosure of welfare department records, a subpoena duces tecum in a child custody case could not be avoided on the ground that such records were confidential. Of particular interest is the fact that the production of the records was requested by the minor involved in the action.

While not directly in point but analogous, the decision of *Stivahtis v. Juras*, 511 P.2d 421 (1973), held that welfare recipients were entitled to their own records under the following:

> These statutes are designed to protect applicants and recipients from exploitation by third parties, not from themselves. Thus as to his own file a recipient is not within the class of persons to whom disclosure of public assistance records is expressly forbidden by statute.

Statutes limiting judicial inquiry should be strictly construed. In *Maryland Casualty Company v. Clintwood Bank*, 155 Va. 181 (1930), the State Corporation Commission claimed as privileged various letters and reports of examination by the Banking Division. The following portion of the opinion is informative:

> The trial court held that the reports and letters could not be required to be produced by the

subpoena duces tecum. In this we think it erred. These statutory provisions should be considered to relate to information of a confidential nature affecting the business of a bank. They should be strictly construed, when invoked for the limitation of judicial inquiry, and are subject to the right of every litigant to call for and produce evidence affecting his substantial rights. (155 Va. at 193.)

The Department of Human Resources relies principally upon *Mace* v. *Jung*, 386 P.2d 579 (Alaska 1963), and similar decisions. In that case Mace brought an action for personal injuries and the trial court, over her objection, ordered the production of records in the custody of the Welfare Department. The Supreme Court of Alaska held this to be error. It is to be noted, however, that in Section 5005 of the *Alaskan Administrative Code* express provision is made for the applicant or recipient of welfare benefits to authorize the release of the records and Mrs. Mace objected to and resisted the release of such information.

Finally, mention should be made of *Beaudreau* v. *Holzer*, 280 A.2d 88 (R.I. 1971), where the Rhode Island court affirmed the lower court's quashing of a subpoena pursuant to an analogous welfare statute. The Court commented:

> In urging that it was error to protect plaintiff's public assistance records from disclosure, defendants, as we understand them, did not question the legislature's power to give such records a privileged and confidential status. Instead, their position is that the statutory privilege goes no further than to forbid voluntary disclosure by public employees, and that the legislature did not intend to prevent disclosure pursuant to the compulsion of a legal subpoena. This argument ignores the unequivocal statement in Sec. 40-9-15 which commences with the significant directive that "No subpoena shall be issued by a court." While defendants cite several cases which appear to support their position, those cases construe statutes which, unlike the statute controlling in this case, do not expressly prohibit the use of

the judicial process to compel the production of privileged records. In the absence of such a prohibition, those courts could properly say that the privilege was neither absolute nor intended to prevent the production of records and the disclosure of information pursuant to a judicial directive.

We have no such express prohibition against divulging these records upon judicial directive in Virginia. Quite to the contrary, the provisions of Section 63.1-209 clearly evince a legislative intent that the records be disclosed "upon the proper order of any Court." A careful balancing of all factors involved leads me to the conclusion that the purpose of the Virginia statute was to prohibit voluntary disclosure and was in no way intended to prohibit the use of an otherwise available court process for the securing of evidence in a judicial proceeding. Particularly is this true where the plaintiff herself has consented to the release of the information. I find that the purpose of the confidentiality portions of the Virginia statute will not be violated by the discovery requested.

For the above reasons the Motion to Quash the subpoena will be denied.