DONALD E. PERCY, Secretary Department of Health and SocialServices
You indicate that it is the desire of the Department of Health and Social Services and the Department of Revenue to engage in an information-sharing program whereby your Department would receive information which would help enable it to determine whether AFDC applicants have failed to inform it of income that was reported on their Homestead Tax Credit applications. The Department of Revenue, in turn, would receive information which would help enable it to determine whether AFDC recipients have filed fraudulent Homestead Tax Credit applications. This information would be exchanged through a computer match.
Information provided by the Department of Revenue to your Department would consist of income information contained on Homestead Tax Credit applications. You raise no question concerning the legality of the release of this information. Federal and state welfare statutes and regulations do not prohibit the Department of Health and Social Services from attempting to obtain such information.
Information provided by the Department of Health and Social Services to the Department of Revenue would include the name and address of the person receiving AFDC and of that person's spouse, their social security numbers, the date when the person was first found eligible to receive AFDC, the amount of assistance granted, and the county granting assistance.
You ask whether release of such information concerning AFDC recipients to the Department of Revenue is permissible under sec. 49.53, Stats., which provides in material part that:
 (1) Except as provided under sub. (2), no person may use or disclose information concerning applicants and recipients of . . . aid to families with dependent children . . . for any purpose not connected with the administration of the [various listed welfare] programs. . . .
 (2)(a) Each county agency administering aid to families with dependent children and each official or agency administering *Page 97 
general relief shall maintain a monthly report at its office showing the names and addresses of all persons receiving such aids together with the amount paid during the preceding month. . . .
 (b) Such report shall be open to public inspection at all times during regular office hours. . . . Within 72 hours after any such record has been inspected, the agency shall mail to each person whose record was inspected a notification of that fact and the name and address of the person making such inspection. The agency shall keep a record of such requests.
 (c) It is unlawful to use any information obtained through access to such report for political or commercial purposes.
For the reasons which follow, it is my opinion that only the amounts of monthly payments made to AFDC recipients together with their names and addresses may be released to the Department of Revenue.
In order to release additional information, it would be necessary to secure an amendment to sec. 49.53, Stats., or to the state plan for the administration of one of the welfare programs (including the AFDC program) listed in45 C.F.R. sec. 205.50(a)(1)(i)(A) (1979).
An analysis of related federal enactments provides a useful starting point from which to respond to your inquiry. Prior to August 9, 1975, 42 U.S.C. sec. 602(a)(9) would have permitted release of this information, since release was authorized to: "(A) public officials who require such information in connection with their official duties, or (B) other persons for purposes directly connected with the administration of aid to families with dependent children." See Pub.L. No. 93-647.
Senate Report No. 93-1356, which accompanies Pub.L. No.93-647, seems to indicate that the phrase "directly connected with the administration of" is to be construed broadly:
 As a further aid in location efforts, welfare information now withheld from public officials under regulations concerning confidentiality would be made available by the Committee bill: this information would also be available for other official purposes. The current regulations are based on a provision in the Social Security Act which since 1939 has required State programs *Page 98 
of Aid to Families with Dependent Children to "provide safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with the administration of Aid to Families with Dependent Children." This provision was designed to prevent harassment of welfare recipients. The Committee bill would make it clear that this requirement may not be used to prevent a court, prosecuting attorney, tax authority, law enforcement officer, legislative body or other public official from obtaining information required in connection with his official duties such as obtaining support payments or prosecuting fraud or other criminal or civil violations.
[1974] U.S. Code Cong. Ad News 8152. (Emphasis added.)
Congress again amended the statute almost immediately after Pub.L. No. 93-647 had been enacted. 42 U.S.C. sec. 602 now provides that:
 (a) A state plan for aid and services to needy families with children must. . . .
. . . .
 (9) provide safeguards which restrict the use of disclosure of information concerning applicants or recipients to purposes directly connected with (A) the administration of the plan of the State approved under this part . . . [or other listed federal welfare statutes], (B) any investigation, prosecution, or criminal or civil proceeding, conducted in connection with the administration of any such plan or program, and (C) the administration of any other Federal or federally assisted program which provides assistance, in cash or in kind, or services, directly to individuals on the basis of need; and the safeguards so provided shall prohibit disclosure, to any committee or a legislative body, of any information which identifies by name or address any such applicant or recipient.
See Pub.L. No. 94-88.
The legislative history accompanying Pub.L. No. 94-88 contains no indication as to why Congress removed the statutory provisions granting public officials access to information concerning AFDC recipients. But since 42 U.S.C. sec. 602(a)(9) was enacted in its *Page 99 
present form, the federal regulations which accompany it have placed stringent requirements on granting access to information concerning AFDC recipients. 45 C.F.R. sec. 205.50(a)(1)(i) (1979) mandates that information concerning AFDC recipients be released only directly in connection with:
 (A) The administration of the plan of the State approved under title IV-A, [or] the plan or program of the State under . . . [various listed federal welfare statutes]. Such purposes include establishing eligibility, determining amount of assistance, and providing services for applicants and recipients.
 (B) Any investigation, prosecution, or criminal or civil proceeding conducted in connection with the administration of any such plans or programs; and
 (C) The administration of any other Federal or federally assisted program which provides assistance, in cash or in kind, or services, directly to individuals on the basis of need. Under the requirements of this paragraph (a)(1)(i), disclosure to any committee or legislative body (Federal, State, or local) of any information that identifies by name and address any such applicant or recipient shall be prohibited; and certification of receipt of AFDC to an employer for purposes of claiming tax credit under Pub.L. 94-12, the Tax Reduction Act of 1975 (see sec. 235.40 of this chapter) shall be considered to be for a purpose directly connected with the administration of the plan.
45 C.F.R. sec. 205.50(a)(2) (1979) emphasizes that access to AFDC records is to be carefully safeguarded since it requires that:
 (iii) The family or individual is informed whenever possible of a request for information from an outside source, and permission is obtained to meet the request. In an emergency situation when the individual's consent for the release of information cannot be obtained, he will be notified immediately.
 (iv) In the event of the issuance of a subpoena for the case record or for any agency representative to testify concerning an applicant or recipient, the court's attention is called, through proper channels to the statutory provisions and the policies or rules and regulations against disclosure of information. *Page 100 
 (v) The same policies are applied to requests for information from a governmental authority, the courts, or a law enforcement official as from any other outside source.
Section 49.53, Stats., must be construed in a manner consistent with the federal legislation and attendant regulations from which it emanates. See Triplett v. Board of Social Protection,19 Or. App. 408, 528 P.2d 563, 567-68 (1974); Finance Committee v.Falmouth Bd. of Pub. Welfare, 345 Mass. 579, 188 N.E.2d 848,851-52 (1963). As to the general relevance of federal regulations, the Wisconsin Supreme Court long ago said: "[I] t is the policy of this court to construe the law of this state so that it will conform as nearly as possible to the federal law and federal practice when applicable to the same subject matter."Nekoosa-Edwards Paper Co. v. Railroad Comm., 193 Wis. 538, 548,213 N.W. 633 (1927). Subsection (C) of45 C.F.R. sec. 205.50(a)(1) (1979) contains no language which would authorize the release of the information which you describe. Subsections (A) and (B) authorize release of information only in connection with the administration of various welfare programs. I have previously stated that county boards of supervisors and committees which are advisory to county welfare boards are not involved in the administration of welfare programs and consequently are not authorized to obtain records concerning AFDC recipients under the provisions of sec. 49.53(2), Stats. 59 Op. Att'y Gen. 240, 245 (1970). The same restrictions apply to the Wisconsin Department of Revenue since it does not administer welfare programs. 45 C.F.R. sec. 205.50(a)(1)(A) and (B) (1979) also authorizes there lease of information in order to determine amounts to be paid from and eligibility for various welfare programs, including the AFDC program. If it were necessary for your Department to make a determination with regard to welfare eligibility or the amount of welfare to be paid, then release of this information to the Department of Revenue would be permissible. But section III-C of the DHSS-DFS Income Maintenance Manual currently provides at pages nineteen and twenty that homestead relief payments are to be disregarded in determining the amount of assistance which should be paid under the AFDC program. Since Homestead Relief payments are not to be considered when AFDC determinations are made, release of this information cannot possibly aid your Department in making eligibility determinations. *Page 101 
Because applicable federal regulations list only a very narrow set of circumstances under which information concerning AFDC recipients may be released, it is my conclusion that the release of information by the Department of Health and Social Services to the Department of Revenue cannot fairly be said to be for a purpose connected with the administration of the AFDC program, even though such information would be useful to the Department of Revenue in determining whether an individual has filed a fraudulent Homestead Tax Credit return. See sec. 71.09 (7)(p), Stats., as amended by ch. 34, Laws of 1979. In reaching this conclusion, I am not unmindful of the language appearing at 29 Op. Att'y Gen. 467, 469 (1940), which would tend to lead to a different result. That opinion was issued long before the passage of Pub.L. No. 94-88, and it therefore does not purport to construe sec. 49.53, Stats., in light of the wording now contained in 42 U.S.C. sec. 602 (a)(9) or in light of the federal regulations accompanying that statute. Present federal regulations flatly prohibit the release of information concerning AFDC recipients to governmental authorities, the courts, or law enforcement officials, even though the release of information to those authorities would have been permissible prior to the passage of the statute in its present form. 45 C.F.R. secs. 205.50
(a)(2)(iii) and (v) (1979). This prohibition applies to the Department of Revenue because it is a governmental authority.
In general, then, information concerning AFDC recipients cannot be released to the Department of Revenue. An exception is contained in sec. 49.53 (2), Stats., as authorized by45 C.F.R. sec. 205.50 (1979), which provides:
 Safeguarding information for the financial assistance and social services programs.
 (a) State plan requirements. A State plan under title IV-A of the Social Security Act, except as provided in paragraph (e) of this section, must provide that:
 (2) The agency will have clearly defined criteria which govern the types of information that are safeguarded and the conditions under which such information may be released or used. Under this requirement: *Page 102 
 (i) Types of information to be safeguarded include but are Not limited to:
 (A) The names and addresses of applicants and recipients and amounts of assistance provided (unless excepted under paragraph (e) of this section);
 (B) Information related to the social and economic conditions or circumstances of a particular individual;
 (C) Agency evaluation of information about a particular individual;
 (D) Medical data, including diagnosis and past history of disease or disability, concerning a particular individual.
. . . .
 (e) Exception. In respect to a State plan under title I, IV-A, X, XIV, or XVI of the Social Security Act, exception to the requirements of paragraph (a) (1) (iii) of this section may be made by reason of the enactment or enforcement of State legislation, prescribing any conditions under which public access may be had to records of the disbursement of funds or payments under such titles within the State, if such legislation prohibits the use of any list or names obtained through such access to such records for commercial or political purposes.
 45 C.F.R. sec. 205.50 (e) (1979), does not specify what information may be contained within AFDC disbursement records which are available to the general public, but sec. 49.53 (2) (a), Stats., provides that a monthly report showing the names and addresses of all persons receiving aid together with the amount paid is to be maintained by each county agency. Under that statute, nothing other than the same information which is available to the general public may be released to the Department of Revenue.
In addition to the foregoing considerations, failure to comply with applicable federal requirements could conceivably result in a cutoff of federal funding for the AFDC program. See State ofIndiana v. Ewing, 99 F. Supp. 734 (D.D.C. 1951). Any doubt as to whether AFDC records should be released must therefore be resolved in favor of maintaining the confidentiality of this information. The state plan for the administration of the AFDC program would have to be *Page 103 
amended to provide for the release of additional information to the Department of Revenue and then reapproved by federal officials before release of the information you describe would be permissible under federal law. Until such approval is obtained, only the names and addresses of AFDC recipients and the amounts of monthly payments made to them may be released to the Department of Revenue.
You also ask whether sec. 49.53 (2)(b), Stats., requires that AFDC recipients be notified when information which is also available to the public under sec. 49.53 (2)(a), Stats., is released to the Department of Revenue. Section 49.53 (2)(b), Stats., does not exempt government agencies from complying with its notice requirements. If it desired to do so, the Legislature could eliminate those notice requirements merely by deleting the last two sentences from sec. 49.53 (2)(b), Stats. Such a deletion would be permissible because notice need not be given with respect to the release of information which is available to the general public pursuant to state statute, as long as any list or names obtained from such records cannot be used for commercial or political purposes. See 45 C.F.R. sec. 205.50 (e) (1979).
BCL: FTC